[Crim. No. 1199. In Bank.—May 24, 1905.]

## In Re GEORGE D. COLLINS, an Attorney at Law.

ATTORNEY AT LAW—ACCUSATION FOR DISBARMENT—VERIFICATION—AC-
CUSER—PRESENTATION OF CHARGES FOR BAR ASSOCIATION.—An accu-
sation for the disbarment of an attorney at law, presented by a
committee of the Bar Association, need not be verified by a mem-
ber of the committee, and a verification by some other person, stat-
ing positively, in the language of the statute, "that the charges
therein contained are true," is sufficient. The person verifying the
accusation is deemed the accuser, though the charges are presented
and conducted on behalf of the Bar Association or the public.

ID.—MODE OF DETERMINING SUFFICIENCY OF VERIFICATION—INADMIS-
SIBLE EVIDENCE.—The sufficiency of the verification to the accusa-
tion is to be determined solely from an inspection of the verifica-
tion; and it can neither be supported nor attacked by evidence
*aliunde*. Where it complies with the letter of the statute, and is
positive in form, evidence is inadmissible to show that it was in
fact made upon information, and not upon personal knowledge of
the charge specified.

ID.—CAUSES FOR DISBARMENT LIMITED BY STATUTE—FALSE STATEMENT
TO SAVINGS BANK—ABSENCE OF CONVICTION FOR CRIME.—The causes
of disbarment of an attorney are limited by the statute; and false
statements made by him in his individual capacity to a savings
bank, whereby he secured the payment of a deposit therefrom,
are not a cause for disbarment, in the absence of conviction of a
felony or of a misdemeanor involving moral turpitude.

ID. — REPRESENTATION OF CONFLICTING INTERESTS — CLAIM AGAINST
ESTATE OF DECEASED PERSON—INJURY NOT SHOWN—PRESUMPTION.
—An attorney might appear upon the record as representing all
parties, with their consent; and it is not ground for disbarment
of an attorney that, while he represented the administrator for

general purposes, he also represented a creditor for a special purpose, where the accusation does not show that the claim was unjust or invalid, or that injury was caused to the estate, or that the claim was not represented by him with the consent of all persons interested in the estate. In the absence of such showing, the contrary must be assumed in favor of innocence.

ID.—PUBLICATION OF MALICIOUS CHARGES AGAINST JUDGE—MISCONDUCT OF ATTORNEY.—The publication by an attorney of false and malicious charges against a judge of the superior court, reflecting on the integrity and official conduct of the judge before whom a case in which the attorney was interested is pending, is official misconduct on the part of the attorney, and he must answer to a charge of such misconduct.

ACCUSATION in the Supreme Court for disbarment of George D. Collins as an attorney at law.

The facts are stated in the opinion of the court.

Philip G. Galpin, Frank P. Deering, and William Denman, Committee for Bar Association, for accusation.

George D. Collins, Respondent, *in pro. per.*

LORIGAN, J.—This is a proceeding wherein George D. Collins, an attorney of this bar, is accused of such unprofessional conduct as, it is claimed, warrants his disbarment. The accusation is made and presented against him by a committee of the Bar Association of San Francisco, and is verified by the oath of Joseph S. Tobin (not a member of the committee), who deposes "that he has read the foregoing petition and that the charges therein contained are true."

The respondent moves to quash the accusation, and also objects by demurrer to the legal sufficiency of each of the several counts it contains.

*As to the motion to quash:* It is insisted that this should be granted because the purported verification made by Joseph S. Tobin is not made by one of the persons who makes the accusation, and is not made by one having personal knowledge of the matters set forth therein, and on the further ground that the accusation is not verified as prescribed by law.

Section 291 of the Code of Civil Procedure, which directly applies to proceedings of the character here involved, prescribes that the accusation must "be verified by some person to the effect that the charges therein contained are true."

The section does not require that the accusation shall be made by any particular person, but only by "some person," and when such an accusation is preferred by a quasi-public body, such as a bar association, or by some other public officer whose duty it is to proceed in such matters in the public interest, it is not contemplated or necessary that the verification should be made by a member of the committee acting for such association, or by such public officer. It is sufficient if the accusation so presented be verified by some person who swears to the truth of the charges set forth in it. Such person is to be deemed the accuser, although the charges are presented, and the prosecution conducted, on behalf of the Bar Association or of the public.

Nor is there any force in the claim that the verification to the charges is not made by one having personal knowledge of the facts, or that the accusation is not verified as prescribed by law. The charges in the accusation here do not purport to be made on information or belief. They state directly and positively that certain acts of an alleged unprofessional character were done by respondent. The oath of Tobin is positive and unqualified that these charges so made are true, and this is all that the statute requires.

The cases of *In re Hotchkiss*, 58 Cal. 40, and *In re Hudson*, 102 Cal. 467, cited by respondent, are not in point. In both these cases the accusation and verification were expressly stated to be made on information and belief.

Upon the point that the verification is not made as prescribed by law it is only necessary to say that it is made in the exact language of the statute. In proceedings of this character the statute (Code Civ. Proc., sec. 291) prescribes the form of oath to be taken, and the verification in question is in the literal language of the legislative requirement.

This disposes of the motion to quash, which we conclude has no merit, and is denied.

In this connection, however, it is proper to dispose of another point made by respondent at the time of the argument on the motion to quash. Prior to that time respondent had attempted to take the deposition of J. S. Tobin, for the purpose of showing on the hearing of the motion to quash that his verification to the accusation was in fact made upon information, and not upon personal knowledge of the matters

specified in the charges. Under advice of the representatives of the Bar Association preferring the charges, and upon the ground that the verification could not be so attacked, when Tobin appeared before the notary and was sworn he refused to answer any questions on that subject. Respondent, upon the argument, insisted that he had a right to take such deposition for the purpose of making such showing under his motion to quash, and asked for an order of this court directing the witness to answer the questions. We were not then disposed to concede any such right as respondent claimed, and do not now consider that he was either entitled to the order or to make the showing. Whether an oath to an accusation is, or is not, sufficient is to be determined from an inspection of the verification alone. The verification can neither be supported nor attacked by evidence taken in some ancillary proceeding, and inaugurated avowedly for that purpose. Its validity or invalidity must be determined upon the face of the verification itself.

*Upon the demurrer:* The accusation consists of three counts, which, for the purposes of this demurrer, may be referred to in a general way, and relate, the first to a transaction of a private nature, and the others to legal proceedings, in all of which the Hibernia Savings and Loan Society of San Francisco was concerned, and in the course of which it is charged, either directly or inferentially, that the misconduct of the respondent arose.

*As to the first count:* It is charged therein that the respondent in May, 1901, for the purpose of securing the payment to himself of $1,255.61, then on deposit in said Hibernia Savings and Loan Society to the credit of one Agnes M. Newman, produced to said J. S. Tobin, the agent and counsel of said banking society, a pass-book issued by it to said Agnes M. Newman, together with an assignment purporting to have been made by her of the same and of said deposit, in favor of respondent, and stated to said Tobin that said Agnes M. Newman had died in said month of May; that at the time of her death she was his wife; that she had assigned and transferred said pass-book and deposit to respondent some time previous to her death; that three of his children had likewise in said month of May died; and that the amount on deposit represented by said pass-book was community property of himself and

his said wife. That upon the assurance of said Tobin that, if he made an affidavit embodying these statements, the said deposit would be paid to him, said respondent, to procure the "immediate and unhesitating" payment of the same, made an affidavit before a notary public of the truth of the facts above recited, except that no mention was made therein of said children or their death. This affidavit was delivered by respondent to said Tobin, and the money was at his direction forthwith paid respondent by the bank.

It is charged that this affidavit, in as far as it is stated therein that Agnes Newman was the wife of respondent, and that the deposit standing in her name and subsequently paid to him was community property, was false, as it is likewise charged that his oral statement relative to the death of his children was false. And in this connection it is also alleged that many years previous to May, 1901, respondent had married a sister of said Agnes Newman, who is still living and undivorced from him.

These constitute the salient facts as set forth in the first count, and it is insisted by respondent that they are insufficient to constitute cause for either his disbarment or suspension. In this regard it is contended generally that the matters stated do not, under any view of the law, constitute a cause for his disbarment or suspension from practice. And it is specially alleged that the matters charged do not bring him within any of the provisions of section 287 of the Code of Civil Procedure, which particularly enumerates the causes for which an attorney may be disbarred, and still further that none of the matters pleaded in said count have relation to any act done or committed by respondent in the practice of the law, or in relation to any thing pertaining to or affecting his professional conduct as an attorney.

Addressing our attention to the points specially made, it is quite clear that the facts recited do not bring respondent within any of the terms of said section 287. A simple reading of the section in the light of the facts charged makes this obvious. It is equally clear that the acts complained of were not done by the respondent in his professional capacity, or in connection with any matters in which his duties as an attorney were involved. His represntations, conceding them to have been falsely made (as the demurrer does), were representa-

tions made in his private capacity, and in a purely personal negotiation with the representative of the bank.

These points—that the matters charged are not within the express terms of any of the provisions of the section, and that the acts complained of were not done in his professional capacity—are conceded by the relator, but it is contended that the provisions of the section are not conclusive upon the power of the court to strike the name of an attorney from the rolls. It is insisted that the power is inherent in the court itself to discipline its officers for causes that are not specified in the statute; that the statute is not to be construed as restrictive of the general powers of the court in this respect; and that the conduct of the respondent, as charged in the first count, shows him to be so wanting in moral integrity that this inherent power of the court should be invoked to remove him, notwithstanding the restrictive terms of the statute.

We are not inclined to indorse the contention of relators in this respect. Whatever the rule may be, in the absence of statutory regulations, as to the power of courts to deprive attorneys of their license for causes which, in the judgment of the court, may warrant that action, we are satisfied that when the legislature has specified the acts for which an attorney may be disbarred or suspended the court is not authorized to act for other causes, or warranted in invoking an asserted implied power to amove for causes not specified in the statute; that the legislature has the power to regulate the causes for which a disbarment or suspension of an attorney may be had, and that the courts are bound by this regulation and the limitation it imposes.

As was said in *Ex parte Yale,* 24 Cal. 243,[1] upon this subject: "The manner, terms, and conditions of their admission to practice, and of their continuance in practice, as well as their powers, duties, and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is regulated by statute."

In the plentitude of its power, as announced in that case, the legislature of the state has plainly defined the causes for which an attorney may be deprived of his right to practice.

[1] 85 Am. Dec. 62.

This it had the right to do, and its specification of such causes is, in our judgment, conclusive on this court. And to the extent that an attorney may be disbarred for causes which affect his moral integrity in dealings with others of a purely personal character, and transacted in his private capacity, the statute has provided that it shall be done by the court only when he has been convicted of a felony, or of a misdemeanor involving moral turpitude. (Code Civ. Proc., sec. 287, subd. 1.)

In all other cases the statute provides for disbarment only when the act or conduct complained of has relation to the violation of the oath taken by him as an attorney, or the violation of some duty or responsibility incumbent or imposed upon him in his official capacity as such attorney. (Code Civ. Proc., sec. 287, subds. 2-4.)

As it is conceded by relators, and is apparent upon the face of the accusation, that the facts stated in the first count do not bring respondent within any of the terms of the section cited, the demurrer to the first count for that reason must be sustained.

*As to the second count of the accusation:* It is there charged that in 1892 one Walter T. Robinson was administrator of the estate of Caroline A. Robinson, deceased, then being administered in the superior court of the city and county of San Francisco, and that on April 17, 1898, respondent became by substitution attorney for said administrator; that prior to the substitution of respondent as attorney for said administrator, an action had been commenced by C. H. Robinson, one of the heirs at law of said Caroline A. Robinson, against her estate, to recover fifteen hundred dollars upon a claim presented against the same and rejected by said administrator; that while attorney for said administrator, respondent became substituted as attorney for said C. H. Robinson in his action against said estate on the rejected claim, and, appearing in said action, had a demurrer, which had been interposed by the former attorney for said administrator, submitted to the court, and it was overruled; that thereafter the letters of administration of said W. T. Robinson were revoked, and in October, 1901, on application of respondent made in behalf of his client, C. H. Robinson, one Purrington was appointed and qualified as administrator of said estate; that thereafter respondent filed an amended and supplemental complaint in

said action of C. H. Robinson against said estate, bringing in Purrington, the administrator thereof, as party defendant, and causing service thereof to be made upon him as such administrator; that no appearance in said action was made by Purrington, and respondent in due course had his default entered, took judgment, and subsequently filed an application on behalf of said Purrington, as administrator, for an order of sale of the property of said estate to pay said claim.

It is further set forth that the Hibernia Savings and Loan Society, prior to April 13, 1896, presented to the administrator of said estate a claim, based upon a note and mortgage executed by said Caroline A. Robinson and her husband, Thomas B. Robinson, which claim was allowed and filed; that on said last date all the heirs at law of said Caroline A. Robinson, except said C. H. Robinson, conveyed their interest in the estate to their father, said Thomas B. Robinson, who, in conjunction with said C. H. Robinson, and by way of renewal of the existing mortgage lien, executed and delivered to said estate a mortgage on all of said property, the said C. H. Robinson, however, not joining in the note; that Thomas B. Robinson subsequently died, and the interest on the note and mortgage becoming delinquent, the said bank foreclosed the mortgage, bid in the property at the sale, and thereafter obtained a commissioner's deed therefor.

Upon these facts it is charged that the respondent was guilty of unprofessional conduct in representing conflicting interests in the suit of C. H. Robinson against the Robinson estate, and his conduct in relation thereto, and particularly "in failing to advise said Purrington as administrator of his duty as trustee to protect said estate against said claim of C. H. Robinson."

We do not think that the facts stated in this count are sufficient to sustain the charge made. While they may show that the respondent did not act with scrupulous regard to adverse criticism of his conduct, or with that sense of propriety which should restrain an attorney from even an appearance of occupying conflicting relations in a legal proceeding, yet the mere fact that he apparently occupied that position does not necessarily imply that, in doing so, he has been guilty of such unprofessional conduct as warrants disbarment. In order to entail that consequence it should appear that there

were antagonistic interests in fact which he assumed to represent upon both sides, and this should appear by appropriate allegations in the accusation. And it should further appear therefrom that in assuming this relation to both sides of a controversy he was acting from a corrupt motive or with evil intent, and that, by reason of such conduct, some injury or wrong was sustained by parties interested directly or indirectly in the litigation. An attorney might appear upon the record as representing all of the parties in a suit with their consent, and no exception could be taken to it as against the attorney. And it does not appear from the facts stated that this was not the situation here. This court has said, speaking with reference to a proceeding for disbarment: "This accusation is in the nature of a criminal charge, and all intendments are in favor of the accused. The accusation is not sufficient if, all its statements being true, the accused could be innocent. . . . A construction favorable to innocence must be given to this, if possible. . . . It is true no such facts are stated in the accusation, but the question on demurrer is, Does the accusation negative the possibility of innocence?" (*Matter of Haymond*, 121 Cal. 388.)

Now, examining the allegations in the light of this rule, it is not contended that respondent actually appeared of record for the administrator in the suit of C. H. Robinson against the estate of Caroline A. Robinson, deceased. The point made is, that while he represented the adminstrator of the estate for general purposes it was his duty to represent him specially of record in controverting this claim, and not to become the attorney for the claimant without relinquishing his employment as attorney for the administrator, and as mainly insisted, it was his duty to advise the administrator to protect the estate against such claim. But this duty could only arise if there was any protection which could be afforded against it, and upon this point the count in question is entirely silent. It is not stated why it was the duty of respondent to advise the administrator to that end, nor is there any averment of facts which would even apparently render that advice or the administrator's resistance to the claim necessary. It is nowhere averred that the claim made against the estate was unjust or invalid, or that there was any defense to it, either on the merits or otherwise, or any possible manner

by which the estate could be protected against its enforcement. Neither does it appear that in obtaining a judgment upon it any benefit accrued to the claimant but what he was justly entitled to, nor that any advantage was secured thereby to the injury of any person interested in the estate of the decedent. For aught that appears in the record the claim was just; no question about its validity could be raised, and hence no necessity or propriety in entailing expense upon the estate in contesting it.

And, as we have suggested, neither does it appear but that all matters with reference to the conduct of respondent in this litigation were with the consent of all persons interested in the estate, a consent which they were empowered to give, and which would justify the conduct of respondent. The only creditor of the estate was the Hibernia Savings and Loan Society, and it is not asserted even that this action of respondent relative to the matter was without its consent or acquiescence.

As to the allegations with reference to the bank's claim against the estate and its own conduct relative to the renewal of the note and mortgage and the foreclosure, these allegations are quite general, and there is an entire absence of specific dates to show when anything was done by the bank relative to these matters, or particular allegations as to how or in what manner it was affected by the conduct of respondent and the administrator by the suit in question, or at all. It may be that the rights of the bank were prejudiced in some manner thereby, but there is nothing of that kind directly averred, nor, if it were permissible, is there such a statement of facts as would warrant a clear inference that it was. Nor is it claimed in the brief of relators that the bank suffered any injury.

As there is nothing in the accusation to negative these matters, it must be assumed, within the rule laid down in the *Matter of Haymond,* 121 Cal. 388, as a conclusion in favor of innocence, that the claim was meritorious, and that no defense to it existed; that the conduct of respondent in the matter of this litigation has worked no injury upon any one interested in said estate, that what he did was in good faith, without improper or corrupt motive, and with the consent of all persons interested in the estate.

*As to the third count:* It is there alleged that in an action on trial in the superior court of the city and county of San Francisco,—The Hibernia Savings and Loan Society against Charles H. Robinson,—in which respondent represented the defendant, the trial judge, about Saturday, March 26, 1904, announced his decision adverse to Robinson and reflecting to some extent upon respondent himself; that before findings in the case were signed by said judge, and on Sunday, March 27, 1904, respondent sent for the reporters of the San Francisco Chronicle and San Francisco Examiner to meet him at his office that day, which they did; that he thereupon stated to said reporters that he was about to make charges against the judge who tried said cause "which would make a story for the papers," and thereupon stated said charges to said reporters, which were next day, and before the signing and filing of said findings, published in each of said papers; that the charges so made were of alleged flagrant violations of the duty of such judge with reference to the substance of the proposed findings in the case and their preparation, and concerning which he stated he had some heated discussion with the judge, together with other charges against said judge, which he stated he proposed making to the governor of the state in order that a special session of the legislature might be called to consider impeachment proceedings against him. The statements so made by respondent to said reporters, which were published next day, charged said judge with malfeasance in office in many particulars, and with incompetency. Said charges so made and given to said reporters on March 27th for publication were on the next day transmitted by mail to the governor of the state of California.

It is charged by the relators that said respondent invited and procured the publication of such charges, publicly attacking said judge before the signing and filing of said findings for the purpose of coercing said judge into modifying them in favor of his client, Robinson, or, in the event of not modifying them, for the purpose of discrediting them when they should be signed and filed; and that all said charges were false, and in making and publishing them said respondent acted in bad faith and maliciously, and in violation of his duty as an attorney.

We are satisfied that the demurrer to this count should be

overruled. The essence of the offense charged against respondent in this branch of the accusation is, that he directly procured and instigated a wide-spread publication in the newspapers mentioned of charges which were false and malicious, and reflecting on the integrity and official conduct of the judge before whom the case in which he was interested was pending, and that this was done by him with a view of improperly influencing or unjustly discrediting the action of said judge in that particular case. No legal exception can be taken to this as a sufficient charge of official misconduct on the part of respondent.

None should have known better than he his duty and obligation as an attorney, and that under his oath of office he was bound "to maintain the respect due to the courts of justice and judicial officers" and "to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth." (Code Civ. Proc., sec. 282.)

And it requires no argument or citation of authorities to the proposition that a false and malicious publication of the character charged, instigated, and procured under the circumstances averred, and with the intent and motive attributed to him, constitutes gross misconduct on the part of respondent as an attorney.

Respondent dwells very largely in his brief on his legal right to prefer charges with the governor of misdemeanor in office and incompetency on the part of the judge with a view of instigating impeachment proceedings, on the assumption that the gravamen of the accusation against him arises from his having done so in this particular case. There is no warrant for this assumption. The right of respondent to prefer charges with the governor in good faith against any judge is not questioned. Nor does the conduct of respondent here involved have primary reference to those transmitted charges, although his good faith in so preferring them is questioned. The alleged official misconduct of respondent— and there is no room for a misconception of the charge— consists of having disseminated through certain public journals false and malicious charges affecting the integrity of the judge in his official capacity, with intent to influence his action or discredit his proceedings in a matter then pending before him, and in which respondent was interested. This is

charged as something aside from and independent of the transmission of formal charges against the judge to the governor, and is alleged to have been done before they were transmitted. Preferring charges against a judicial officer in good faith and through the proper channel is a matter of legal right. Publishing false charges to influence or affect judicial action in a pending cause is misconduct on the part of an attorney doing so. This latter is what the respondent is charged with having done, and is a very different matter from preferring charges against a judge in a legal manner and through the recognized channel as a basis for action by the proper public officer or duly constituted tribunal.

The demurrer is overruled as to the third and sustained as to the first and second counts, with leave to relators to amend within twenty days, should they so elect. Should they not elect to amend, then, upon notice to respondent to that effect, he shall have fifteen days after such notice within which to answer the accusation.

Henshaw, J., McFarland, J., Angellotti, J., Shaw, J., and Van Dyke, J., concurred.

BEATTY, C. J., concurring.—I concur in the order of the court and generally in the opinion. Respecting the second count of the accusation, I do not think the attorney of an administrator can with any propriety accept a retainer to prosecute a claim which the administrator has rejected. But in this case it appears that Collins did not enter any default against the administrator whose attorney he was when first employed as attorney for C. H. Robinson, and so, though chargeable with an impropriety, it resulted in no wrong.

When the first administrator was removed the situation was simply this: Collins was attorney for a party desirous of litigating a rejected claim against the estate of a decedent, and the administration was vacant. In such a situation I suppose there is no doubt that an attorney may, for the purpose of enabling his client to prosecute the action, apply in his behalf for the appointment of an administrator, and the administrator being appointed he may act as his attorney generally in all matters in which his client's interest coincides with that of the other creditors, and of the heirs or devisees; that is to

say, he may represent the administrator in any proceeding for the discovery or collection of assets, or in the resistance of unjust or illegal demands. But with respect to his client's demand, I conceive that his duty is very clearly indicated by the provisions of section 1510 of the Code of Civil Procedure, relating to an analogous case. It might not be necessary to serve the summons on the probate judge, but the matter should be called to his attention, so that in the exercise of his discretion he might appoint an attorney to defend the action. It would not be the duty of the attorney to advise the administrator to resist the claim, but it would be his duty to refer him to the judge for instruction as to the proper course to be pursued, and pending action by the judge no default should be taken or judgment entered.