[S. F. No. 19262.   In Bank.   Sept. 28, 1955.]

LIONEL BROWNE, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Lionel Browne, in pro. per., for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Petitioner, Lionel Browne, seeks a review of disciplinary proceedings in which the Board of Governors of The State Bar recommended that he be suspended from the practice of the law for a period of three years. A prior three months' suspension imposed in December, 1948, was taken into consideration in the recommendation.

Petitioner, who is now approximately 58 years of age, was admitted to practice law in this state in August, 1925. For about 19 years he served as deputy attorney general in California and as attorney for the State Medical Board.

In July, 1952, petitioner was sharing the office of another attorney. Petitioner used the office without paying rent or sharing in any of the other usual office expenses. In return for the use of the office, he handled cases turned over to him by the attorney and the record shows that they participated in the fees on a 50-50 basis. In July, 1952, at the other attorney's request, petitioner filed an action in which he sought to recover certain furniture for a Mrs. Morse, then known as Claudia Christianson. The other attorney's name appeared on the complaint and he was present at the trial but took no part therein. The State Bar ordered that his name be expunged from all records in connection with this proceeding.

On September 29, 1953, plaintiff recovered a judgment in the case for $440 and petitioner was given a check in that amount by the attorney for the defendant. The check was made payable to petitioner and Mrs. Morse, jointly. The record shows that he signed his name and hers, cashed the check and received the proceeds thereof. A few hours thereafter he entered a cocktail lounge with the money in his possession and had some drinks. Petitioner testified that he had a few drinks and possibly a drugged drink and that he

became ill and temporarily lost full consciousness. When he returned to his hotel later that evening he discovered that he had only $162.50 remaining of the $440 he had received when he cashed the check. He placed the money remaining in an envelope addressed to the other attorney and gave it to the clerk of the hotel with instructions to deliver it to the other attorney. The other attorney testified that he picked up the envelope the next day, sealed it in the presence of the clerk of the hotel and took it to his home where he placed it in his strongbox. Petitioner, some days later, informed the other attorney concerning the cashing of the check and the missing balance thereof.

Mrs. Morse testified that she did not learn of the judgment, or petitioner's receipt of the check, until December 14, 1953; that previously she had tried unsuccessfully to contact petitioner and the other attorney. Petitioner testified that after he informed Mrs. Morse of the loss of the money, he offered her his promissory note for the balance but that she refused to accept it; that he had endeavored unsuccessfully to raise the money with which to pay Mrs. Morse. The envelope containing the $162.50 was not given to Mrs. Morse until the hearing in this proceeding. At the time of the last hearing, the other attorney, on petitioner's behalf, offered to pay to Mrs. Morse the undisputed balance to which she was entitled.

Mrs. Morse contended that petitioner agreed to handle the case for her on a 20 per cent contingent fee basis; petitioner, on the other hand, contended that the arrangement was for a 50 per cent contingent fee basis. He was unable to remember whether he had ever discussed the matter of fee with her; that he was of the impression that the other attorney had done so; that he had never taken a case on a 20 per cent basis; that it was always on a 50 per cent basis. The other attorney testified that he did not remember discussing the matter with Mrs. Morse, but that they never took cases on a 20 per cent basis.

The local committee found the facts as heretofore set forth and that although petitioner signed the check without Mrs. Morse's knowledge, it was done without improper intent; that he intentionally and wilfully failed to notify her that he had received the money until December 14, 1953; that without the knowledge, or consent, of Mrs. Morse, petitioner misappropriated and converted her money to his own use and benefit. Concerning the other attorney, the local committee found that he knew of the misappropriation and failed to

notify Mrs. Morse or account to her for any of the proceeds of the check until after she had consulted The State Bar It was found that both attorneys had violated their oaths and duties as attorneys, and rule 9 of the Rules of Professional Conduct* and that they had committed acts involving moral turpitude, dishonesty and corruption. The local committee recommended that the other attorney be publicly reproved and that petitioner be suspended for a three months' period

The Board of Governors thereafter ordered the proceeding dismissed as to the other attorney, and with four members dissenting because of the severity of the punishment, recommended that petitioner be suspended from the practice of the law for three years.

Petitioner contends that the Board of Governors exceeded its jurisdiction in recommending a penalty greater than that recommended by the local committee; and that the evidence was insufficient to warrant the "punishment imposed by said committee of a suspension for the period of six (6) [sic] months."†

The evidence was in sharp conflict as to the contingent fee percentage as heretofore noted and the local committee specifically made no finding thereon. If petitioner's theory is accepted (*Golden* v. *State Bar*, 213 Cal. 237, 247 [2 P.2d 325]). Mrs. Morse would have been entitled to receive, in addition to the $162.50, approximately $52. (She had advanced about $10 to pay costs of suit.) ▉ In the Golden case, *supra*. it was held that any reasonable doubts must be resolved in favor of the accused. (See also *In re Luce, McDonald, & Torrance*, 83 Cal. 303 [23 P. 350]; *In re Stephens*, 84 Cal. 77 [24 P. 46]; *Matter of Haymond*, 121 Cal. 385 [53 P. 899]; *In re Collins*, 147 Cal. 8 [81 P. 220]; *Bar Association of San Francisco* v. *Sullivan*, 185 Cal. 621 [198 P. 7]; *Aydelotte* v. *State Bar*, 209 Cal. 737 [290 P. 41]; 6 Cal.Jur.2d, § 129. p. 299.)

▉ We said in *Hildebrand* v. *State Bar*, 18 Cal.2d 816. 834 [117 P.2d 860], that "In proceedings of this character where the evidence is conflicting, as was shown to be the fact herein, the findings of the local administrative committee and

---

*"'A member of The State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client.''

†The record shows, under the signatures of the three members of the local committee that the recommendation of that body was for a three months' suspension.

of the Board of Bar Governors are not necessarily binding on this court (*In re Petersen*, 208 Cal. 42 [280 P. 124] ; 9 Cal. Jur. 10-Yr.Supp., p. 440)'' and that "it is the duty of this court to pass upon the evidence, weigh its effect, and finally determine whether it is sufficient to sustain the charges against the accused attorney'' (*Werner* v. *State Bar*, 13 Cal.2d 666, 673 [91 P.2d 881] ).

Bearing in mind the rule that any reasonable doubts must be resolved in favor of the accused (*Golden* v. *State Bar*, 213 Cal. 237, 247 [2 P.2d 325], and other cases cited, *supra*) the record shows that there was no evidence that petitioner used the proceeds of the check with which to buy liquor ; that he was in the bar for only a few hours; that he may have been drugged; that the money may have been stolen from him. The attorney for The State Bar admitted at the hearing before the trial committee that the evidence did not actually establish any commingling of funds, and that "presumably, a few dollars in his [petitioner's] pocket would have purchased the number of drinks that was testified to." The primary issue at the hearing appeared to be the failure of Mr. Browne to promptly notify Mrs. Morse of the recovery of judgment and the subsequent loss of the money. The record shows, undeniably, that Mrs. Morse was not informed of either the judgment, or the loss of the major portion of the proceeds thereof for two and a half months. There is no doubt that petitioner was guilty of a violation of rule 9 of the Rules of Professional Conduct.

"In reviewing the evidence, findings and conclusions of the Board of Bar Governors, it is the duty of this court to re-examine the entire proceedings before said board as they are required to be kept, and transmitted to this court. (*In re Shattuck*, 208 Cal. 6 [279 P. 998].) 'This court is not bound by the findings or recommendations made by the local administrative committee, nor their adoption by the Board of Bar Governors, and will examine the record anew to ascertain whether or not any charge has been proven against petitioner which merits disbarment.' (*In re Stafford*, 208 Cal. 738 [284 P. 670].)' '' (*Werner* v. *State Bar*, 13 Cal.2d 666, 673 [91 P.2d 881].)

This court may adopt the Board of Governor's recommendation concerning the guilt of the petitioner, but disagree with the recommendation concerning the discipline to be applied (*Hall* v. *State Bar*, 12 Cal.2d 462 [85 P.2d 870] ; *Glenn* v. *State Bar*, 14 Cal.2d 318 [94 P.2d 43] ; *Prime* v.

*State Bar*, 18 Cal.2d 56 [112 P.2d 881] ; *Bryant* v. *State Bar*, 21 Cal.2d 285 [131 P.2d 523] ; *Lowe* v. *State Bar*, 40 Cal.2d 564 [254 P.2d 506]). It would appear that in view of the evidence adduced the recommendation of three years' suspension is a penalty too severe and is not warranted by the facts. The local committee recommended a three months' suspension even though the prosecuting representative of the Bar asked for ''from six months to a year'' as a discipline to be recommended by the committee.  ██  The local committee is the body which sees the witnesses, and the parties, and hears the testimony given for both sides. It appears to us that the recommendation of that fact-finding body is entitled to great weight when the matter is under consideration by this court and that its recommendation of a three months' suspension should be adopted by us. As we said in *Egan* v. *State Bar*, 10 Cal.2d 458, 462 [75 P.2d 67], ''The recommendation of the local committee, which was in closer touch with the personal attributes of petitioner and the background of the case on the hearing than are we on the record, has caused us to hesitate to award the extreme penalty provided by law. Especially is this so since the recommendation of disbarment made by the board of governors was by a nine to six vote.''

It is our opinion that the recommendation of the local committee that petitioner be suspended from the practice of the law for a period of three months should be adopted as the decision of this court.

Therefore, it is ordered that petitioner be, and he is hereby, suspended from the practice of law for a period of three months, this order to become effective 30 days from the filing of this decision.