[L. A. No. 26618.   In Bank.   May 15, 1962.]

WALLACE W. ROCK, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Wallace W. Rock, in pro. per., for Petitioner.

Garrett H. Elmore and Glenn W. Groenewold for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of the State Bar of California that petitioner be suspended from the practice of law for a period of two years.

The record discloses that:

(1) In 1958 Mrs. Garfield Green retained petitioner to quiet title to a parcel of real property, paying him a total of $240. Mrs. Green telephoned petitioner's office repeatedly during the period from October 1958 to October 1960, but he failed to return her calls. She succeeded in reaching him by telephone, however, on three different occasions. On the first, in 1959, petitioner told her that nothing had yet been done. On the second occasion, which was in early 1960, petitioner told her that the papers were going to be signed the following Thursday and that he would call her then at 5 o'clock, but he did not do so. On the third occasion, which was in October 1960 after she had made a complaint to the State Bar against him, petitioner told her that a judgment had been rendered in her favor and that he would send her a copy of it, but she never received it.

The Board of Governors found: "The quiet title complaint was signed on September 26, 1958. It was filed in October and the default was entered on December 17, 1958. Respondent attempted to get a judgment shortly after entry of the default but failed to present the evidence required to

obtain a decree. Respondent did not secure the decree until July 1960."

(2) Mr. Reavis employed petitioner to obtain a divorce for him. Mr. Reavis testified that petitioner agreed to institute the proceedings when he received $125, which sum was paid him by December 15, 1959. Mr. Reavis had agreed to pay $200 for attorney's fees and $45 for costs and actually paid a total of $230. He tried many times, without success, to reach petitioner by telephone. When he finally succeeded in doing so, petitioner told him that his case "didn't make the calendar." This statement was false and untrue, and was known by petitioner to be false and untrue, as petitioner had not yet filed the divorce action.

The Board of Governors found: "Respondent wilfully failed to file a divorce action on behalf of Reavis and wilfully failed to respond to his communications or to make himself reasonably available for conference with his client. Respondent received a fee of $200.00 and $30.00 for costs. Respondent has neglected and refused to perform the services for which he was employed by Reavis."

(3) Mrs. Olson and Mrs. Woolliscroft, her mother, were referred to petitioner in June 1958 by the Lawyers Reference Service. They sought his services in connection with the flooding of property owned by Mrs. Woolliscroft. Mrs. Olson testified that she had to "handle" the matter for her mother, because her mother was elderly and hard of hearing. When petitioner required Mrs. Woolliscroft's signature, he sent the papers to Mrs. Olson, and she obtained her mother's signature on them. All checks given to petitioner in the course of the matter were signed by Mrs. Olson. The only time petitioner spoke with Mrs. Woolliscroft was on the occasion when he went out to the property to inspect it. Otherwise everything was handled through Mrs. Olson.

On November 22, 1959, Mrs. Olson wrote a letter to petitioner relative to the matter in which he was representing her and her mother, but he did not reply. She attempted on numerous occasions to reach petitioner by telephone and on many occasions stopped by his office. She testified that on two occasions she spoke with petitioner in his office without previous appointment, and that on each of those occasions he told her that he was going to make an appointment with the judge and would let her know what had happened.

Mrs. Olson's husband was subsequently told by petitioner that a default judgment had been taken in March 1960. He

testified that he called petitioner on the telephone ''close to a hundred times''; that he had been able to reach petitioner perhaps half a dozen of those times; and that although petitioner promised to call him several times, he never did so.

On one occasion Mrs. Olson called petitioner at his home, and he refused to talk with her over the telephone.

Mr. and Mrs. Olson also testified that petitioner at no time disclosed to them that the default judgment which had been entered was likely to be set aside, as it in fact was, with petitioner stipulating thereto.

The Board of Governors found that petitioner ''has been grossly negligent in the matters set forth in Counts I, II and III, in violation of his oath and duties as prescribed in Sections 6067 and 6068 of Business and Professions Code. Such gross negligence is a course of conduct constituting moral turpitude.''

These are the questions necessary for us to determine:

First. *Did the evidence sustain the findings of the Board of Governors?*

*Yes.* ▉ These rules are here applicable:

(1) In a disciplinary proceeding against an attorney, findings of fact by local administrative committees and the Board of Governors are not binding on the Supreme Court, which will weigh and pass upon the sufficiency of the evidence to sustain the findings of the board. (*Sturr* v. *State Bar,* 52 Cal.2d 125, 127 [1] [338 P.2d 897].)

▉ (2) The burden is upon one seeking a review of a recommendation of the Board of Governors to show that its findings are not supported by the evidence or that its recommendation is erroneous or unlawful. (*Hatch* v. *State Bar,* 55 Cal.2d 127, 128 [1] [9 Cal.Rptr. 808, 357 P.2d 1064]; *Sullivan* v. *State Bar,* 50 Cal.2d 491, 500 [1] [326 P.2d 138]; *Webb* v. *State Bar,* 47 Cal.2d 866, 868 [1] [306 P.2d 458]; Bus. & Prof. Code, § 6083, subd. (c).)

▉ In accordance with the foregoing rules, we have examined the record and find that there is ample evidence to sustain the findings of the Board of Governors and that petitioner has failed to show that the findings are not supported by the evidence or that its recommendation is erroneous or unlawful.

Of the three matters involved herein, only in the first did petitioner perform, after a fashion, the services for which he was retained. There he did succeed in obtaining ultimately a decree quieting title to Mrs. Green's property. In that mat-

ter, however, it required petitioner approximately one year and nine months from the time of his retention to obtain the decree. During this period he made only three attempts to do so, the first two of which were unsuccessful because he did not present the evidence required to obtain the decree. On the third attempt the decree was granted on the presentation of a deed. During this time petitioner failed to respond to inquiries from his client and, having promised to do so, failed to send her a copy of the decree. He had been paid a fee of $200, plus $40 for costs.

In the second matter petitioner refused to file a divorce action for which he had been paid a fee of $200 plus $30 for costs. He failed to respond to communications from his client and, additionally, led his client to believe that the case had not made the calendar, it having in actuality not been filed. He did not perform the services for which he had been employed, nor did he make any attempt to perform them.

In the third matter petitioner failed to respond to inquiries from his clients, and when, after a period of approximately 1¾ years, he obtained a judgment by default, he informed the Olsons of this judgment without informing them of its true nature, that is, that he expected to have the judgment set aside.

The record in the present case shows more than mere negligence or omission by an attorney. Common to all three matters is a pattern, following retention of petitioner, of refusal to respond to inquiries from his clients: When telephoned, he invariably was "out." Requests left to have him return the calls brought no response. When reached, his most frequent response was to promise to call at a later specified time, which he did not do.

The attempts to contact petitioner were not isolated but numerous. For example, in the Green matter "for several months . . . once a day" and in the Olson matter "close to a hundred times." In one instance when reached at home after not making the promised call, he declined to speak because he was too busy frying steaks for guests.

Further, in both the Reavis and the Olson matters, when the cases pending were discussed with petitioner, his clients were misled, Reavis into believing that the action had not come to trial because it had not made the calendar and the Olsons into believing that a valid judgment had been obtained.

In many cases discipline has been imposed where there was negligent conduct which was not declared to be gross negli-

gence, but in most of such cases there was also misrepresentation or other improper conduct. Petitioner's actions with respect to his clients in the present case clearly show that he was negligent and that, in addition, he made misrepresentations to his clients, constituting in the present case gross negligence. (*Stephens* v. *State Bar,* 19 Cal.2d 580, 583 [1b] [122 P.2d 549] ; *Marsh* v. *State Bar,* 2 Cal.2d 75, 77 [39 P.2d 403].)

█ Second. *Was the discipline recommended by the Board of Governors excessive?*

*No.* The penalty recommended by the Board of Governors—two years' suspension—is not excessive. (*Sullivan* v. *State Bar, supra,* 50 Cal.2d 491, 502; *Stephens* v. *State Bar, supra,* 19 Cal.2d 580, 583.)

It is ordered that petitioner be suspended from the practice of law in this state for two years, commencing 30 days after the filing of this order.

Petitioner's application for a rehearing and for a stay of execution was denied June 13, 1962.