[L. A. No. 27885.   In Bank.   Nov. 18, 1964.]

DAVID C. MOORE, Petitioner, v. THE STATE BAR OF
CALIFORNIA, Respondent.

Edward Clayton Jones for Petitioner.

Garrett H. Elmore and Herbert M. Rosenthal for Respondent.

THE COURT.—Petitioner, David C. Moore, was admitted to practice law in this state in 1941. He has no previous disciplinary record. The Board of Governors by a vote of 14 to 1 recommends that he be suspended from practice for a period of 90 days for misconduct in connection with his representation of one Butler. Although it appears that petitioner's difficulties arose to some extent out of his misplaced reliance upon a fellow lawyer, the record further establishes that petitioner personally breached his professional obligations of service and protection to a client, and that the recommended discipline is warranted.

On November 25, 1961, at a consultation in a public bar, petitioner accepted employment from Butler to represent him in a lawsuit pending in the Los Angeles Municipal Court, in which a judgment of $700 plus interest was sought against Butler. Petitioner stated to Butler that in addition to an answer to the complaint he would perhaps file a cross-complaint on Butler's behalf; petitioner was to share on a contingent fee basis in any recovery on a cross-complaint. Attorney Barnes was also present in the bar, and according to petitioner he introduced Barnes to Butler as ''my employee, or maybe I said associate.'' Petitioner requested and received from Butler a check for $70 as a retainer, and a check for $15 as costs, both of which he cashed.

A few days later (after November 25, 1961) Butler called by appointment at petitioner's office, but found him absent. Barnes was in the office, however, and secured Butler's signature to ''a blank form'' which, according to Butler, Barnes stated ''will give us the right to file the counter action in your suit.'' Butler further testified that this was the first time he had met Barnes, and that the office secretary introduced Barnes as petitioner's associate. Butler next spoke with petitioner early in January 1962, when he inquired about the case by telephone and was told by petitioner, ''don't worry, these things take time.''

At some time thereafter, although whether also in January or possibly some two to four months later in 1962 is not clearly established, Butler received a telephone call from plaintiff in the lawsuit (who was appearing in propria persona) informing Butler that a default judgment had been secured against

the latter and inquiring about his payment of it. Butler immediately relayed this information to petitioner by telephone, and was told by petitioner "'That is impossible. They couldn't have gotten judgment against you. . . . I will contact [plaintiff] right away and find out what this is all about.'' Butler testified that on at least 25 occasions after reporting the judgment to petitioner he tried without success to reach the latter by telephone at his office or at his hotel and left messages but did not hear from petitioner. Petitioner testified that he recalled receiving messages at his hotel before he had learned of the default judgment, and talking with Butler there and assuring him that "everything was all right."[1]

In any event, on May 9, 1962, Butler was served with an order for appearance of judgment debtor. Butler thereupon personally took the order to petitioner at his office, where petitioner stated that he was sorry, that his clerk or assistant had lost all the papers pertaining to the case, and that petitioner would "do everything in my power to . . . rectify this mistake.'' Petitioner also called the plaintiff, told him that the matter would be taken care of forthwith and asked him not to proceed with the examination; he further stated to Butler that he (petitioner) would file a motion under section 473 of the Code of Civil Procedure seeking to have the judgment against Butler set aside, that he would file an answer on Butler's behalf, and would telephone Butler. Butler testified that during this interview Barnes was "in and out of the office, but he didn't sit in on the conversation.''

The day after taking the order to petitioner Butler telephoned petitioner's office, and was unable to reach petitioner, but was told by "this secretary'' that "the answer had been filed, the 473 had been filed, and not to worry, I would not have to appear in court for the hearing at a debtor examination'' which was set for May 16, 1962. Surely petitioner should realize that statements by his secretary purporting to implement promises which he himself had made would be relied upon by his client. A few days later Butler received a telephone call from Barnes, stating that petitioner had requested Barnes to reassure Butler that "everything was going to be taken care of'' and that Butler would not have

---

[1]Without finding or implying that the statute is applicable to petitioner on the facts of this case, but by way of a caveat generally in respect to positive asseveration of facts to a client, the plain language of Civil Code section 1572, subdivision 2, is not to be overlooked.

to appear in court, or "in any case if you do have to appear we will call you."

In reliance on these statements Butler did not appear on the date set, and later the same month received in the mail a notice that a warrant had been issued for his arrest. He thereupon surrendered himself, and was examined. He also reported the matter to the State Bar, and retained another attorney who succeeded in having the judgment against Butler set aside and judgment entered in his favor. Butler's "last contact" with petitioner in person was at the May conference in petitioner's office when he presented to petitioner the order for appearance of judgment debtor. Petitioner did not refund to Butler the $85 received from him, or offer to so do.

Petitioner asserts that he employed Barnes to assist in the Butler matter and had the right to rely upon Barnes' integrity and ability. Petitioner thus mistakenly places himself in the position of his client rather than in that of his client's lawyer. He testified that he first became associated with Barnes early in 1961 when Barnes was seeking employment; that Barnes was "primarily a collection attorney" and had formerly represented a client of petitioner, whose own "principal activity is corporations and taxes." Petitioner also states that he was "house counsel" for a corporation with offices at a Sepulveda Boulevard address (where he also then officed), that later in 1961 he hired Barnes to assist him but that Barnes was the employe of the corporation, which paid his salary. Still later petitioner became associated (and officed) with a different corporation which "was a collection operation" at a Riverside Drive location, and again Barnes was employed by the corporation as petitioner's assistant. Barnes also on occasion assisted petitioner on "extraneous things" such as the Butler matter, for which petitioner paid him separately at "so much per job."

Petitioner testified further that following his agreement on November 25, 1961, to represent Butler, he turned over to Barnes "for handling the paper work" the $70 retainer received from Butler; that thereafter an answer was prepared by Barnes on behalf of Butler which petitioner signed as the sole attorney of record and turned over to either Barnes or to the office secretary, with the $15 costs, with instructions to file it. When petitioner learned from Butler that no answer had been filed, he made inquiry of Barnes and the secretary, and was told by Barnes that he had forgotten to file the answer and that "it would be taken care of forthwith."

Petitioner assertedly relied upon Barnes and the secretary to proceed, and *gave the matter no further attention until when, in May, Butler brought the order for examination of judgment debtor to petitioner's office.*

Petitioner also testified that after Butler had left the office on that occasion he reprimanded Barnes and told him in strong language to act promptly; that Barnes gave no reason for his previous failures to act. Within the next two days Barnes prepared "moving papers . . . for a motion under 473" and petitioner signed a "declaration" in support of the motion to set aside the default which had been taken against Butler. Petitioner says that he again relied upon Barnes and the secretary to proceed, and recalls no further contact with Butler until the complaint was made to the State Bar. Petitioner further testified that following such complaint Barnes had "disappeared" so far as petitioner's "knowledge of his whereabouts" was concerned, and that petitioner's files on the Butler case, among others, were missing; that "in about August" 1962, petitioner (over the telephone) "fired" Barnes; that at the time of the hearings before the local administrative committee in June 1963, Barnes was in Nevada and the secretary could not be located.

Butler testified that he was at no time advised that petitioner intended to turn his case over to Barnes to handle.

It further appears that Barnes was admitted to practice in this state in 1951. In January 1961 he was convicted in Los Angeles County of a violation of section 476a of the Penal Code (issuance of a check without sufficient funds), and on May 16, 1961, this court ordered him suspended from practice (in B.M. 2694) by an interim order of suspension under section 6102 of the Business and Professions Code "pending final disposition of" the proceeding. The interim suspension was never set aside and became merged in the final order, made June 27, 1962, suspending Barnes for three years. Thus Barnes was suspended from practice during the entire period involved in the subject disciplinary proceeding against petitioner Moore.

Petitioner's excuse for employing a suspended lawyer and entrusting him with substantial—and largely, if not wholly, unsupervised—responsibility in the representation of a client, is that he did not learn, during the period here involved, that Barnes was having "difficulty with the State Bar." He testified that he first learned of such difficulties shortly after he discharged Barnes in August 1962; that at some unspecified time he learned of Barnes' bad check conviction and suspen-

sion from practice, but that at the time of moving to the Riverside Drive office in 1962 he "checked with the Bar Association" and was informed that Barnes was "eligible to practice law"; that Butler first aroused petitioner's suspicions as to Barnes' reliability, and that Barnes had also failed petitioner with respect to one other case at about the same time as the Butler matter occurred; that, however, Barnes' personal habits "seemed to be all right" and he was a sober and industrious person, "The hardest worker I have ever seen."

The Board of Governors found among other things that after Butler was notified by the plaintiff that a default judgment had been taken against him, and in turn notified petitioner, Butler attempted about 25 times to reach petitioner by leaving messages, but heard nothing from petitioner; that petitioner "repeatedly told Butler that he was personally handling Butler's case and . . . that the proper papers were filed"; that petitioner made no significant effort at any time to determine whether Butler's interests were being protected, but "repeatedly placed complete reliance on Barnes' promises and competence long after he knew that Barnes had been grossly negligent and careless"; that during petitioner's representation of Butler he was "not concerned nor did he exercise a reasonable degree of responsibility for the interests of the client he agreed to represent" but instead took the position that "he had no further degree of professional responsibility once he had asked another member of the bar to perform the services that he had agreed to perform." As already noted, the board recommends that petitioner be suspended from practice for 90 days.

In reviewing a disciplinary proceeding this court passes upon the sufficiency and weight of the evidence and is not bound by the findings of fact of the local committee or the board, although the burden of showing that the board's findings are not supported by the evidence or that its decision or action is erroneous or unlawful is upon the petitioner.

However, charges of unprofessional conduct on the part of an attorney should be sustained by convincing proof and to a reasonable certainty and any reasonable doubts should be resolved in favor of the accused. (*Schullman* v. *State Bar* (1963) 59 Cal.2d 590, 599-600 [3, 4] [30 Cal.Rptr. 834, 381 P.2d 658].)

As already noted, the evidence is conflicting as to whether Butler, and in turn petitioner, learned of the default judg-

ment in January 1962, or whether it was in late April or early May; i.e., only a week or two before Butler was served with the order for appearance of judgment debtor. Thus the period of time that petitioner delayed initiating steps to have the judgment set aside, after he had been notified thereof by Butler and before Butler was served with the order for appearance, is not exactly established. However, it is shown without dispute that approximately one more week was permitted to elapse between the time petitioner received the order from Butler and the date (May 16) set for Butler's appearance for the debtor examination, during which period Butler twice received assurances by telephone from petitioner's assistants that "everything was going to be taken care of" and "not to worry"; but still no effective steps had been taken by petitioner for protection of his client. Further, petitioner admits that he knew of the default judgment against Butler at least several days before Butler was served with the order to appear, and thus was aware that neither Barnes nor the secretary had followed through by filing the answer which petitioner had signed on Butler's behalf. Petitioner nevertheless again left his client at the mercy of office assistants who had thus demonstrated their unreliability, and even after receiving the order from Butler petitioner for the third time relied upon Barnes and the secretary to proceed, and admittedly made no personal check on the matter to see that they had done so. Even though Butler, as shown by his own testimony, became aware a few days after employing petitioner that Barnes was petitioner's associate, nevertheless it was petitioner who had accepted Butler as his client and it was upon petitioner that Butler was entitled to rely for the required legal service for which he had advanced costs and a retainer.

On behalf of petitioner it is pointed out that this court declared in another context that "It would seem clear that unless the entire burden of attending to every detail of practice is to be borne by the attorney in charge of litigation as distinguished from his clerks and employees that the neglect of the attorney in this case was excusable. It must be conceded that any attorney having a large practice must rely to some extent upon his employees for the conduct of the litigation intrusted to him, and the issuance and service of a citation is one of the matters which an attorney would be justified in confiding to a trusted employee, who was himself an attorney." (*Estate of Withenbury* (1922) 188 Cal. 109, 112 [204

P. 385].) However, an attorney who accepts employment necessarily accepts the responsibilities of his trust. Certainly the evidence supports a finding that in the circumstances here shown petitioner was guilty of culpable negligence in failing to more closely supervise Barnes in his handling of the Butler case. Whether petitioner's conduct in the premises constitutes such gross or extreme neglect as to show wilful failure to discharge his duties as an attorney, or otherwise evidences moral turpitude, is a somewhat closer question. (Bus. & Prof. Code, §§ 6106, 6067; see *Call* v. *State Bar* (1955) 45 Cal.2d 104, 109 [2-3], 111 [6] [287 P.2d 761]; *Rock* v. *State Bar* (1962) 57 Cal.2d 639, 643-644 [3] [21 Cal.Rptr. 572, 371 P.2d 308, 96 A.L.R.2d 818].) ▮ As observed in the *Call* case (at p. 111 [6] of 45 Cal.2d), "The good faith of an attorney is a matter to be considered in determining whether discipline should be imposed for acts done through ignorance or mistake."

▮ Although we are of the view that it is not convincingly established that petitioner deliberately intended to abandon his client, or that he committed acts necessarily evidencing moral turpitude per se, his continued neglect to make certain that Butler received the service and protection owed and promised him as a client by petitioner, coupled with assurances which were not fulfilled, and followed by failure to even reimburse Butler for the $85 received from him, combine to constitute sustained, deliberate and wilful dereliction in the discharge of his professional duties to Butler. Under such circumstances suspension for three months is not excessive.

It is ordered that David C. Moore be suspended from the practice of law for a period of three months commencing 30 days after the filing of this opinion.