[L.A. No. 30469. In Bank. Jan. 30, 1976.]

ROBERT A. DOYLE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

974

**COUNSEL**

Theodore A. Cohen for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law for one year upon conditions of

probation, including actual suspension for the first month and the making of restitution to his client.

Petitioner was admitted to practice in California in 1962. He has no prior record of discipline. He was charged in two separate matters with the violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068) and the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106). After a hearing on both charges the local administrative committee found that petitioner acted wilfully and in a grossly negligent manner in the representation of Raymond Chellman and that he made misrepresentations to both Chellman and the State Bar. The committee also found that petitioner wilfully failed to perform any of the services for which he was retained on behalf of Steve Bulboff and refused to return a $1,500 retainer fee, converting that sum to his own use.

Petitioner was retained by Chellman in October 1968 to act as attorney in the probate of the estate of his mother; petitioner agreed to handle the "entire case" and to arrange to have stock and realty in the estate transferred to Chellman. Petitioner's inaction was evident from the outset. He did not file a petition for letters of administration until March 1969. Chellman was appointed administrator of the estate in May 1969, but petitioner did not obtain letters of administration for him until June 1970, at which time petitioner also filed proof of publication of notice to creditors. Although an administrator is required to render an accounting within five months after the time notice is given to creditors (Prob. Code, §§ 922, 700), no further documents in the probate proceeding were filed until more than nine months later when, in April 1971, petitioner filed an inventory and appraisement.

Beginning in late 1968, Chellman made repeated efforts to communicate with petitioner; on the rare occasions when contact was made, petitioner assured him work on the probate was proceeding. Finally, in June 1972 Chellman complained to the State Bar.

On July 10, 1972, the State Bar wrote to petitioner advising him of Chellman's complaint and requesting a status report. On July 12 petitioner filed a certificate of inheritance tax; in August he notified the State Bar that the delay in completing the probate of the estate was due to the apparent loss of an appraiser's report, but that his "petition" was now ready for presentation to the court.

At a preliminary disciplinary hearing held in December 1972 petitioner admitted he had acted improperly in delaying the case and promised he would "wrap up" the entire probate within two to four weeks. Nevertheless, although a probate hearing was held in February 1973, the formal decree settling the first and final report and the decree of final distribution of the estate were not presented to the court until May 1973, i.e., four and one-half years after petitioner undertook to handle this routine probate matter. Thereafter petitioner failed to effectuate the transfer of stocks to Chellman, and in April 1974 Chellman procured that transfer through his own efforts.

The facts in the Bulboff matter are simple. In February 1973 petitioner was retained by Bulboff to file an action for an injunction and for damages to his home. Petitioner represented to him that a lawsuit would be filed within 30 days, and accepted a retainer of $1,500. Petitioner did not file the lawsuit within the time agreed.

After several unsuccessful attempts to reach petitioner by telephone, Bulboff sent him a letter indicating his displeasure. On April 5, 1973, petitioner replied, "we are still involved in researching the problem as well as preparing the necessary document. . . . Please be patient and I will keep you advised of all matters."

Petitioner nevertheless failed to contact his client further, and on May 1, 1973, Bulboff again wrote demanding that petitioner either file the "necessary papers" or withdraw from the case and return the $1,500 "deposit." Petitioner did not file the action, did not return the fee to or otherwise contact Bulboff, and did no research which was of benefit to his client.

The local administrative committee recommended that petitioner be suspended from the practice of law for three years but that execution of the suspension order be stayed and petitioner placed on probation for that period, with actual suspension for the first 30 days. The disciplinary board adopted the findings of the committee with minor modification, but recommended suspension and probation of only one year, with 30 days actual suspension.[1]

---

[1] Both the local committee and the board recommended that as a condition of the stay of the order of suspension petitioner be required to make restitution to Bulboff of the $1,500 plus interest. Petitioner has since executed a declaration to the effect that he has made such restitution in full, with supporting evidence. The recommended condition of probation is therefore no longer necessary, and may be disregarded.

Petitioner admits that the facts set out in the findings of the board are "fairly stated," and properly subject him to discipline. The sole issue before us, accordingly, is what discipline should be imposed.

■ Petitioner's behavior unquestionably constitutes serious misconduct. Failure to communicate with and inattention to the needs of a client, standing alone, may constitute proper grounds for discipline. (*Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168]; *Taylor* v. *State Bar* (1974) 11 Cal.3d 424, 431 [113 Cal.Rptr. 478, 521 P.2d 470].) Similarly, discipline has been imposed for accepting compensation for legal services but failing to render such services. (*Grove* v. *State Bar* (1967) 66 Cal.2d 680, 683 [58 Cal.Rptr. 564, 427 P.2d 164]; *Bruns* v. *State Bar* (1941) 18 Cal.2d 667, 669-670 [117 P.2d 327].)

■ Even if an attorney's misconduct is not wilful and dishonest, "Gross carelessness and negligence constitute a violation of the oath of an attorney to 'faithfully discharge the duties of an attorney . . . to the best of his knowledge and ability' and involve moral turpitude, in that they are a breach of the fiduciary relation 'which binds him to the most conscientious fidelity' [to his clients' interest]. [Citation.]" (*Waterman* v. *State Bar* (1936) 8 Cal.2d 17, 20 [63 P.2d 1133]; *Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 859 [100 Cal.Rptr. 713, 494 P.2d 1257]; *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].)

When an attorney's disregard of his clients' interests is "habitual" (*Ridley* v. *State Bar* (1972) 6 Cal.3d 551, 560-561 [99 Cal.Rptr. 873, 493 P.2d 105]; *Grove* v. *State Bar* (1967) *supra*, 66 Cal.2d 680, 683-684), or when failure to render services is combined with failure to communicate with the client and with misrepresentation, severe discipline has been imposed. (*Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638]; *Rock* v. *State Bar* (1962) 57 Cal.2d 639, 643-644 [21 Cal.Rptr. 572, 371 P.2d 308, 96 A.L.R.2d 818].)

■ In deciding what sanction is warranted, however, each case must be decided on its own facts and there are no fixed standards as to the appropriate penalty. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) ■ Our guiding principle is that "The purpose of a disciplinary proceeding is not punitive but to inquire into the fitness of the attorney to continue in that capacity for the protection of the public, the courts, and the legal profession." (*Id.*, at p. 748; *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 386 [90 Cal.Rptr. 420, 475 P.2d 652]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 151 [77 Cal.Rptr.

657, 454 P.2d 329].) Determination of the discipline to be imposed must be based on a "balanced consideration of all the relevant factors" (*Spindell* v. *State Bar* (1975) *supra,* 13 Cal.3d 253, 261; *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289]), including any mitigating circumstances. (*Demain* v. *State Bar* (1970) *supra,* 3 Cal.3d 381, 387.)

Petitioner, a polio victim confined to a wheelchair, urges that financial and domestic difficulties may be considered in mitigation of discipline. (*In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651]; *Benson* v. *State Bar* (1971) 5 Cal.3d 382, 388 [96 Cal.Rptr. 30, 486 P.2d 1230].) He asks us to take into account the fact that during the period in which his misconduct occurred he was encountering substantial economic, emotional, and business problems.

Petitioner testified that during this period he suffered from illness, necessitating hospitalization and frequent medical treatment. His medical expenses, added to those of his wife who was also disabled, increased his financial problems; and the financial problems, in turn, aggravated what was already a strained marital relationship. Petitioner was at that time in partnership with another attorney, but the association proved to be an unhappy one, adding to his difficulties.

We note that petitioner has no prior disciplinary record (*Spindell* v. *State Bar* (1975) *supra,* 13 Cal.3d 253, 261; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 715 [108 Cal.Rptr. 821, 511 P.2d 1173]), and we consider his behavior at the hearings below. Where, as here, an attorney has "displayed candor, cooperation and remorse throughout the disciplinary proceedings and a willingness to accept punishment and to rehabilitate himself," we have held less severe discipline to be sufficient. (*Bradpiece* v. *State Bar* (1974) *supra,* 10 Cal.3d 742, 748; *In re Higbie* (1972) 6 Cal.3d 562, 574 [99 Cal.Rptr. 865, 493 P.2d 97].) We further recognize that petitioner's present attitude is one of remorse. (*In re Cohen* (1974) *supra,* 11 Cal.3d 935, 943.)

Finally, we acknowledge petitioner's efforts to rehabilitate himself (*Demain* v. *State Bar* (1970) *supra,* 3 Cal.3d 381, 388; *In re Urias* (1966) 65 Cal.2d 258, 261-262 [53 Cal.Rptr. 881, 418 P.2d 849]) and to remedy his problems. Petitioner's personal difficulties appear to be resolved. We are advised that his wife died shortly after the local disciplinary hearing; he has since remarried, and apparently enjoys a happy home life. In addition, petitioner sought counseling. Dr. Darrell W. Bolen, a psychia-

trist, expressed in a declaration his belief that petitioner will profit significantly from his contemplated psychotherapy and that the type of difficulties which resulted in the complaints against petitioner are not likely to recur.[2]

With respect to his business problems, petitioner testified that he is presently practicing without a partner but with the aid of fulltime office help, and that his practice is "slowly building up." In addition, he is taking an accounting course to remedy the "blind spot" in his education and has been referring probate matters and certain personal injury cases to other attorneys, limiting his practice to those fields in which he feels "more competent."

■ Although we attach great weight to the recommendations of the board, we may adopt the board's conclusion concerning the guilt of an accused attorney but revise its recommendations as to the discipline to be imposed. (*Browne v. State Bar* (1955) 45 Cal.2d 165, 170 [287 P.2d 745].) ■ In the present case we conclude that the three-year suspension recommended by the local committee, rather than the one-year suspension recommended by the board, is the proper discipline to impose on petitioner in view of the seriousness of his misconduct. In reaching this conclusion, moreover, "we have considered the fact that petitioner personally appeared and testified before the local administrative committee but did not do so before the Disciplinary Board . . . ." (*Benson v. State Bar* (1971) *supra,* 5 Cal.3d 382, 388.) We further adopt the recommendation that execution of the order of suspension be stayed and that petitioner be placed on probation for three years. Because of the mitigating circumstances discussed hereinabove, however, we do not impose a period of actual suspension.

As a condition to continuing his practice petitioner will be required to take and pass the Professional Responsibility Examination. (*Segretti v. State Bar* (1976) *ante,* p. 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].)

Accordingly, it is ordered that petitioner be suspended from the practice of law for three years; that execution of the order of suspension be stayed; and that he be placed on probation for that period upon condition that he comply with the conditions of probation recommended

---

[2]Although not part of the proceedings below, this declaration is properly before the court and may be considered in determining petitioner's fitness to practice. (*Demain v. State Bar* (1970) *supra,* 3 Cal.3d 381, 386, fn. 1; *Resner v. State Bar* (1960) 53 Cal.2d 605, 613 [2 Cal.Rptr. 461, 349 P.2d 67].)

by the disciplinary board, except that there will be no period of actual suspension and petitioner will not be required to certify in his first quarterly report to the State Bar that he has read the State Bar Act and the Rules of Professional Conduct; in lieu of that requirement, we further order as a condition of probation that within one year after the effective date of this order petitioner pass the Professional Responsibility Examination. This order is effective 30 days after the filing of this opinion.