[L. A. No. 30582. Sept. 24, 1976.]

FRANKLIN BELL GASSMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Joel H. Freis, Patrick R. Naylon and Richard T. Sykes for Petitioner.

Herbert M. Rosenthal for Respondent.

**OPINION**

**THE COURT.**—We review a recommendation of the Disciplinary Board (the Board) of the State Bar that petitioner be suspended from the practice of law for two years on conditions of probation, including actual suspension for the first six months.

Petitioner was admitted to practice in 1962 and has no prior disciplinary record. He was charged with the violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), the willful violation of rule 9 of the Rules of Professional Conduct of the State Bar (present rule 8-101, commingling of clients' funds), and the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106).

After a hearing, the local administrative committee found petitioner guilty of all charges, and recommended that he be suspended from the practice of law for six months on certain conditions of probation including one month actual suspension. The Board unanimously adopted the findings of the local committee, but recommended a two-year probation with six months' actual suspension.

This proceeding is based upon a series of events following the death of Violet Powaukee, who was killed in an automobile accident and survived by her three minor children. In January 1971, petitioner was retained by Judy Jones, Mrs. Powaukee's sister, to probate the Powaukee estate. Although petitioner filed for and obtained letters of administration, and published a notice to creditors, thereafter he took no further action in the estate, neglecting to file an inventory or accounting, until well after disciplinary proceedings had commenced. In a related matter, petitioner had also been retained by Tillie Mericle, the children's grandmother, to establish a guardianship for the minors. Once again, although he filed for and obtained letters of guardianship, and a support allowance for the minors, petitioner thereafter neglected to file either the requisite inventory or accounting.

Petitioner was also retained to prosecute a civil action against the driver of the other vehicle on behalf of the estate and the two Powaukee children injured in the collision. The action was settled in favor of the estate for $15,000, and in favor of the children for $13,500. The estate's settlement check was given to petitioner in August 1971, and was deposited in a commercial account in petitioner's sole name at Security Pacific National Bank. Thereafter, from time to time, these funds were used for the payment of his own office expenses.

Between July 1970 and February 1973, petitioner employed Walter Graham as secretary, bookkeeper, and paralegal assistant. Graham was compensated by receiving 20 percent of petitioner's legal fee in those cases in which Graham participated. Many of the checks drawn on the

above-mentioned commercial account were signed by Graham using petitioner's signature without authorization; four such checks were rejected for insufficient funds.

Based on the foregoing evidence, the Board found that petitioner willfully failed to establish and maintain the Security Pacific account as a client trust account and failed to maintain in a separate client's trust account the client's portion of the $15,000 settlement received for the estate; that petitioner knowingly delegated to Graham, without adequate supervision, the responsibility of maintaining a client trust account, of keeping an accurate account of client funds in his possession, and of preserving such funds in an account separate from his own; that petitioner willfully abandoned his client, Judy Jones, with regard to action required to be taken in the estate of Violet Powaukee, deceased; that petitioner willfully failed to prepare and file an inventory, accounting or report in the estate matter; that petitioner willfully abandoned his client, Tillie Mericle, with regard to the action required to be taken in the guardianship of the Powaukee children; and that petitioner engaged in an illegal fee-splitting agreement relating to fees earned from legal work done with Walter Graham, a person not admitted to the State Bar.

Petitioner contends that the evidence is insufficient to sustain the findings that he acted willfully with respect to the above matters, and that the discipline recommended by the Board is excessive; it is petitioner's position that this court should impose the lesser discipline recommended by the local committee.

We consider the first contention mindful of the familiar principle that the findings of the State Bar " ' . . . are entitled to great weight and petitioner has the burden of showing, in support of his contention, that they are not supported by substantial evidence [citations].' " (*Wells* v. *State Bar* (1975) 15 Cal.3d 367, 370 [124 Cal.Rptr. 218, 540 P.2d 58].)

Petitioner concedes that he was negligent in the supervision and management of his office, but seeks to place the full burden of the trust account irregularities upon the shoulders of his secretary-bookkeeper, Graham. However, petitioner's assertion that he did not become aware of the lack of funds in the trust account until February 1973, when Graham left, is controverted by documentary evidence that when petitioner personally closed the account in August 1972 there was less than $200 in it. The record amply supports the Board's findings that petitioner willfully failed to establish a trust fund accounting procedure

which would enable him to determine the amount owing to clients from time to time, and that petitioner's willful failure was a result of his knowing delegation of responsibility to Graham and his failure to supervise Graham adequately.

The record further demonstrates that the willfulness of petitioner's misconduct was not limited to his lack of supervision of Graham and the trust account, but also extended to the representation of his clients. The Board found that petitioner had taken no action since mid-1971 to file any accountings, inventories, or reports in connection with either the estate or the guardianship proceedings. In response, petitioner maintains that ". . . all matters have been properly discharged . . . with respect to each and every aspect of these cases." However, according to the State Bar, court files disclose that petitioner has still taken no action in the guardianship proceeding, and that he took no action in the estate matter until October 1975—a date considerably later than that on which these disciplinary proceedings were initiated and approximately one year after petitioner, in testimony before the local committee, had expressed a willingness to close both the estate and guardianship.

In sum, petitioner has not sustained his burden regarding the Board's findings of willfulness. Petitioner's failure to establish and supervise a proper trust account procedure to safeguard his clients' funds, and his further inaction concerning both the guardianship and estate proceedings, were not only willful, but evince a flagrant and continuous disregard of his clients' interests.

■ Even assuming, arguendo, that petitioner's conduct constituted that degree of gross negligence which fell short of willfulness, it may nonetheless involve moral turpitude: " 'Gross carelessness and negligence constitute a violation of the oath of an attorney to "faithfully discharge the duties of an attorney . . . to the best of his knowledge and ability" and involve moral turpitude, in that they are a breach of the fiduciary relation "which binds him to the most conscientious fidelity" [to his clients' interest]. [Citation.]'." (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937]; *Waterman* v. *State Bar* (1936) 8 Cal.2d 17, 20 [63 P.2d 1133].)

■ Petitioner admits that his fee-splitting agreement with Graham was illegal. However, he claims that he never intended the agreement to be utilized for illegal purposes. Petitioner's defense lacks merit. His admission of the existence of the agreement, thus establishing the

element of willfulness, is sufficient to subject him to discipline under Business and Professions Code section 6077; any mistake on petitioner's part as to the scope of the ethical tenets regarding fee-splitting (then rule 3 of the Rules of Professional Conduct) is immaterial, since it is well established that knowledge of the rules is not an element of the offense. (*Abeles* v. *State Bar* (1973) 9 Cal.3d 603, 611 [108 Cal.Rptr. 359, 510 P.2d 719].)

Petitioner finally contends that the Board's recommendation of six months' actual suspension is excessive and that the local committee's one-month actual suspension recommendation is ". . . more than adequate to serve the ends of justice." In matters of discipline, however, the recommendation of the Board is to be weighed more heavily than that of the local administrative committee. (*Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 804 [126 Cal.Rptr. 232, 543 P.2d 600].) Six months' actual suspension for the various acts of misconduct involved in the present case, including a willful violation of rule 9, is clearly not excessive and, indeed, as we explain below, is inadequate in the light of our prior holdings that a willful violation of rule 9 alone warrants a maximum of three years' suspension. (Bus. & Prof. Code, § 6077; *Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 905 [126 Cal.Rptr. 785, 544 P.2d 921].)

The record here reveals an attorney who has failed to render adequate services to a number of related clients, in a number of separate proceedings, for a period of over four years. During this time, petitioner mismanaged thousands of dollars of his clients' funds. Some of his clients' monies inured to petitioner's benefit, in that the Security Pacific account was used to pay a portion of petitioner's office expenses.

While such trust fund mismanagement is a very serious offense by itself, the record demonstrates further areas of petitioner's misconduct, including failure to provide promised legal services and making false representations to his clients. Finally petitioner admits his participation in an illegal fee-splitting agreement with nonattorney Graham.

We have imposed severe discipline in prior cases where, as here, an attorney's failure to render services is combined with misrepresentation and failure to communicate with the client. (See *Alkow* v. *State Bar of California* (1971) 3 Cal.3d 924, 936 [92 Cal.Rptr. 278, 479 P.2d 638]; *Rock* v. *State Bar* (1962) 57 Cal.2d 639, 643-644 [21 Cal.Rptr. 572, 371 P.2d 308, 96 A.L.R.2d 818].) Moreover, prior cases involving similar offenses (commingling clients' funds and committing acts involving moral

turpitude in violation of attorney's oath and duties) by attorneys with no previous disciplinary record suggest that as much as one-year actual suspension is an appropriate sanction. (*Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350-351 [113 Cal.Rptr. 371, 521 P.2d 107], and citations therein.)

Furthermore, we note that despite petitioner's motive in so doing, his participation in an illegal fee-splitting arrangement with Graham posed serious danger to the best interests of his clients, and warrants discipline in and of itself. "Prohibited fee-splitting between lawyer and layman . . . poses the possibility of control by the lay person, interested in his own profit rather than the client's fate . . . ." (*Emmons, Williams, Mires & Leech* v. *State Bar* (1970) 6 Cal.App.3d 565, 573-574 [86 Cal.Rptr. 367].) That very possibility has been realized here.

Petitioner asks us to consider, in mitigation, the serious emotional stress under which he was laboring from early 1971 to mid-1972 due to marital problems, child custody battles, and the sudden death of a close friend and former partner. While serious personal problems may be considered in mitigation (*In re Cadwell* (1975) 15 Cal.3d 762, 772 [125 Cal.Rptr. 889, 543 P.2d 257]), petitioner's difficulties provide no explanation for his continued serious misconduct over a three-year period after his substantial recovery from any emotional problems in mid-1972.

Petitioner offers, also in mitigation, examples of his diligence toward the Powaukee minors in securing them additional benefits, including a $6,333.33 settlement from the Bureau of Indian Affairs (United States Interior Department). Regarding the mismanagement of any other funds secured his clients, petitioner concedes only that he was negligent in supervising Graham, characterizing the latter as the willfully dishonest party.

After careful consideration of all the mitigating circumstances invoked by petitioner, we conclude that the recommended discipline of six months' actual suspension is inadequate. It is ordered that petitioner be suspended from the practice of law for two years with execution stayed and petitioner placed on probation for that period upon the conditions of probation recommended by the Board, except that the period of actual suspension be one year, and that he pass the Professional Responsibility Examination within one year after the effective date of this order.

(*Segretti* v. *State Bar* (1976) 15 Cal.3d 878 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective 60 days after the filing of this opinion, and the period of probation shall commence as of the date on which the order becomes effective.