IN THE MATTER OF RICHARD K. WEINROTH, AN ATTORNEY AT LAW.

Argued April 22, 1985—Decided August 7, 1985.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause for the Office of Attorney Ethics.

---

with adequate retroactive coverage, the trial court would then be justified in enforcing the policy as written.

*Adrian M. Foley, Jr.*, argued the cause for respondent (*Connell, Foley & Geiser*, attorneys).

PER CURIAM.

This is an attorney disciplinary case in which the respondent was found to have violated Disciplinary Rule 2–103(C) and Disciplinary Rule 3–102(A). These Rules, respectively, prohibit an attorney from rewarding a lay person who had referred a client to the attorney and from sharing a legal fee with a lay person. A formal ethics committee complaint was filed against respondent on November 22, 1983 charging him with violating these disciplinary rules. Hearings were held by the District XIII Ethics Committee (Committee), which found that respondent violated both Disciplinary Rules. The Committee recommended a public reprimand. On appeal the Disciplinary Review Board (Review Board) agreed with the conclusions of the Committee, also finding that proscribed conduct was established by clear and convincing evidence. A majority of the Review Board concluded that under the totality of the circumstances, public discipline is warranted.

We have independently reviewed the record, including the transcript of the proceedings before the Committee and the Review Board, and the Committee's Presentment and the Review Board's Decision and Recommendation. The facts are accurately recapitulated in the Review Board's decision, *viz:*

In early June 1980, Respondent's law firm was contacted by State Senator James R. Hurley who stated he had a client with a Green Acres problem and wanted to know if the firm handled such cases. Hurley was the owner and operator of a public relations and advertising agency and had among his clients, Maurice River Co., a land development company wholly owned by WaWa, Inc. WaWa was interested in selling more than 5,000 acres of land, commonly known as the Union Lake property in the Millville area of the State. WaWa, a Pennsylvania based company, had asked Hurley to recommend a New Jersey law firm to handle the negotiations.

Members of the law firm and WaWa representatives met on June 19, 1980. WaWa representatives wanted to engage the firm, but the parties could not agree on the legal fee. This fee dispute was "so grave" that WaWa contemplated not retaining the firm. The law firm initially was seeking a $20,000

retainer, but WaWa wanted to pay on a percentage basis if the land sale was completed.

Shortly after this meeting, Respondent saw Hurley who asked if the law firm had been retained. When informed öf the fee impasse, Hurley said he believed that WaWa was making a mistake and promised to call the company to urge it to retain the law firm. When Hurley contacted Richard Wood, Jr., President and Chief Executive officer of WaWa, he "strongly endorsed" Respondent's law firm as experts in Green Acres matters. As a result of this, Respondent's firm was retained. The fee agreement provided for a $10,000 retainer and potential compensation up to $50,000, depending upon the price ultimately paid by the State for this property.

About six months later, Respondent determined that the $1,200–$1,500 an acre valuation for the property was incorrect and that the property would not sell for more than $800 an acre. The firm also discovered that a portion of the Union Lake property would have to be sold to a local public utility, the Landis Sewerage Authority. The land negotiations became more complicated and Respondent's firm devoted more time to this project than initially anticipated. Respondent informed Vincent E. Anderson, General Counsel for WaWa, that the agreed upon retainer was inadequate and asked the company to consider increasing the compensation. Anderson discussed this request with Wood and they agreed to pay Respondent's firm up to $100,000 if WaWa were satisfied with the results. This change to the retainer agreement was not reduced to writing.

Negotiations for the sale of the Union Lake property were concluded during June 1982. WaWa was to receive $4.1 million from the State and Landis Sewerage Authority for its land. Unknown to both Respondent and WaWa, Hurley had taken an active role as a State Senator in promoting the acquisition of this land because he felt his constituents were in favor of this action.

Sometime in November 1982 Respondent unexpectedly encountered Hurley. During this conversation, Respondent informed Hurley that the project was closed, which Hurley already knew. Expressing his appreciation for referring WaWa to the law firm, Respondent told Hurley that if he were an attorney, he might have been entitled to a referral fee. Since he has not, there was no way the firm could compensate him. In response to Respondent's questions, Hurley said he had not received any additional compensation from WaWa or the Richard Wood Foundation above his regular retainer. Between 1973 and 1979, Hurley's monthly retainer was $300–$350; in 1980, it had been reduced to $100 because the company was phasing out of real estate developments. According to Respondent, Hurley was disappointed in not receiving some compensation for his efforts. Respondent told Hurley he agreed with him since Hurley had done work not related to his public relations retainer by recommending Respondent's law firm and resolving the fee dispute. Respondent promised Hurley he would contact Anderson and suggest Hurley should receive some compensation. While Respondent insisted he never told Hurley that he would recommend a $10,000 bonus, Hurley maintained that Respondent had specifically mentioned this amount as a recommended fee.

Within a month, Respondent told Hurley that he would be contacted by Wood to discuss this matter. Anderson later told Respondent that WaWa agreed that Hurley should have received additional compensation, but the company had overlooked this. Anderson said the company had closed its books on this project and had no additional funds for this purpose. He asked Respondent if his law firm would be willing to return a portion of the fee it received. Respondent replied he would have to discuss this with his partners. After an informal discussion, the law partners decided to wait until they received more information from WaWa.

Hurley met with Wood and Anderson. Wood said he felt Hurley deserved a fee because he appreciated Hurley's efforts in bringing the two parties together and resolving the fee dispute. According to Hurley, Wood stated that Respondent's firm and WaWa would each pay one-half of the proposed $10,000 bonus.

The critical factual determination in this matter involves the manner in which Hurley assertedly received a portion of respondent's fee. The circumstances surrounding this event are rather complicated and convoluted and bear careful scrutiny. The Review Board's narrative of these facts is accurate, and we again turn to its presentation, *viz,*

According to Respondent, Anderson telephoned him and said WaWa would pay Hurley $10,000. He asked if Respondent's firm would return $5,000. Respondent "knew why they were asking" for the return of $5,000, but insisted that there was "absolutely no *quid pro quo;*" there was no understanding that WaWa would give Hurley the money only if the law firm returned $5,000. Respondent considered that his firm had been compensated above and beyond what WaWa was obligated to do under their contract. Additionally, if the firm did not return the money, the client probably would not use their legal services again. He also considered whether it was possible to interpret this return of money to WaWa from the law firm as being a payment to Hurley and whether there was anything inappropriate in returning money to a client or giving credit for legal services. After informally discussing this request with members of his firm, it was agreed instead of directly returning the money, the firm would give WaWa a $5,000 credit for additional legal work. The firm partners felt their actions comported with the disciplinary rules. Respondent did not intend to reward Hurley or to give him money. He did not think that Hurley, whom he had known for 15 years and who never before had referred a matter to a law firm, could read their action as a reward for recommending a client to the firm.

WaWa accepted Respondent's proposal of a $5,000 credit, but wanted a deadline set for usage of this credit. A deadline of April 1, 1983 was set. This arrangement was finalized by letter dated December 9, 1982 which stated:

This will confirm our telephone conversation wherein I indicated to you that WaWa, Inc./The Richard Wood Foundation has a credit for legal services in the amount of $5,000. Charges for activities on your behalf will be calculated according to the hourly rate of the individuals assigned to handle the matter.

In the event that any portion of the credit remains outstanding as of April 1, 1983, it will be returned.to you upon your request.

In mid-March 1983, Respondent telephoned Anderson because he "was anxious" to determine if there was any possibility of his firm doing additional legal work for WaWa. Anderson replied that there was nothing immediate, but that he would keep the firm in mind. He asked Respondent to return the $5,000, which he did by letter dated March 14, 1983.

The Review Board also mentioned that the Joint Legislative Committee of the State Legislature conducted an ethics hearing concerning Hurley's conduct in this matter and found Hurley guilty of a breach of ethics, which warranted a formal reprimand. The Joint Legislative Committee found as a fact that the $10,000 fee Hurley received was solely for having referred WaWa to respondent's firm and for interceding in the fee dispute.

## II.

Respondent has been found to have violated Disciplinary Rules providing that:

A lawyer shall not compensate or give anything of value to a person or organization to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client * *.

[DR 2–103(C)]

A lawyer or law firm shall not share legal fees with a non-lawyer * * *.

[DR 3–102(A) ][1]

We have independently reviewed the record and are satisfied by clear and convincing evidence that respondent has violated these rules.

---

[1]These Rules have been superseded by and subsumed in the recently adopted Rules of Professional Conduct, which in pertinent part provide:

5.4(a) A lawyer or law firm shall not share legal fees with a non-lawyer. The new Rule repeats Disciplinary Rule 3–102(A) but has not continued the language of Disciplinary Rule 2–103(C), although commentary to the Rule of Professional Conduct 5.4 suggests that both Disciplinary Rules 2–103(C) and 3–102(A) are the source for the new Rule.

We agree that respondent violated both Disciplinary Rules when he agreed to return $5,000 to WaWa knowing that this amount was to be paid to Hurley, a lay person, for bringing a client to respondent's firm.[2] As found by the Committee and the Review Board, respondent created in Hurley's mind the thought that Hurley should be compensated for the referral, and respondent first suggested to both Hurley and WaWa that such a payment be made. Ultimately, Hurley received a $10,-000 bonus, $5,000 of which came from respondent's firm, albeit indirectly.[3] The Committee concluded that the sole purpose of a request by WaWa to have respondent reduce his legal fee was to assist WaWa in paying Hurley a fee as a reward for recommending respondent's firm. Thus, the evidence is clear and convincing that the anticipated effect of respondent's action was fee-sharing with a lay person.

Moreover, the record supports the conclusion that respondent was well aware of the prohibition of directly sharing a fee with a lay person for recommending a client. He advised Hurley that if he were an attorney, he might have been given a referral fee. Aside from respondent's actual subjective intent, the circuitous route of payment to Hurley creates the inference that respondent sought to evade the sanction of the Discipli-

---

[2]The Committee concluded that respondent's December 9, 1982 letter was evidence of a consciousness of wrongdoing and an attempt to disguise the substance of the transactions. It was, according to the Committee,

> strong evidence that respondent was conscious that the transactions were unethical. The December 9, 1982 letter represents a transparent attempt to create the possibility that (1) no funds would ever pass from respondent's firm to WaWa in the event that $5,000 of free legal services were provided or (2) even if funds were ultimately returned to WaWa from respondent's firm, the payment would not be suspiciously contemporaneous with WaWa's $10,000 payment to Senator Hurley.

[3]The Committee concluded that even if no payment had been made, Disciplinary Rule 2–103(C) was violated, because respondent's direct intercession with his client on Hurley's behalf itself was giving something of value to Hurley. The Review Board disagreed, finding that the payment for the referral constituted an indispensable element of the ethical violation.

nary Rules rather than attempt to comply with these ethical strictures. As repeated by the Review Board, according to respondent, among the factors he considered in making this decision, were:

[w]hether it was even possible to interpret that there was any flow from Sterns, Herbert and Weinroth, to James Hurley, number one. Number two, whether there was anything at all inappropriate with returning money to a client, or giving a credit for legal services which could, I suppose, be interpreted in the same fashion.

Respondent argues that Disciplinary Rule 2–103(C) had not previously been applied in a like situation, that its meaning is uncertain, and that it would be unfair to discipline him for its asserted infraction absent any clear precedent.[4] We disagree. Our precedent has always emphasized that not only impropriety but "even the appearance of impropriety" that casts doubt upon the integrity of the legal process must be avoided. *In re Milita*, 99 *N.J.* 336, 342 (1985); *see* Rules of Professional Conduct, RPC 1.7(c)(2) (New Jersey maintains appearance of impropriety standard). Thus, when it is evident that an informed and concerned person would find the attorney's relationship improper, an attorney must avoid the conduct that creates such an impression. *See Ross v. Canino*, 93 *N.J.* 402, 408–09 (1983); *In re Professional Ethics Opinion 452*, 87 *N.J.* 45, 50 (1981); *In re Advisory Opinion 361*, 77 *N.J.* 199, 206 (1978).

The prohibition of the Disciplinary Rule is clear. It simply forbids the splitting or sharing of a legal fee by an attorney with a lay person, particularly when the division of the fee is intended to compensate such a person for recommending or

---

[4]Respondent refers to an ethics opinion to suggest that the rule is inapposite because here the client, WaWa, paid a fee for the referral. See Committee of Professional Ethics of New York County Lawyers Association, Opinion No. 113 (1917). That matter, however, may be distinguished because it did not involve the formation of a lawyer-client relationship; it involved only the payment of compensation to private investigators who had located a judgment debtor and who, prior to the attorney's involvement, had been hired on a contingency-fee basis to locate the debtor.

obtaining a client for the attorney. The policy served by this Disciplinary Rule is to ensure that any recommendation made by a non-attorney to a potential client to seek the services of a particular lawyer is made in the *client's* interest, and not to serve the business impulses of either the lawyer or the person making the referral; it also eliminates any monetary incentive for transfer of control over the handling of legal matters from the attorney to the lay person who is responsible for referring in the client. *See Gassman v. State Bar,* 18 *Cal.*3d 125, 132 *Cal.Rptr.* 675, 679, 553 *P.*2d 1147 (1976); *In re Lebowitz,* 67 *A.D.*2d 240, 414 *N.Y.S.*2d 735 (1978); *see also Model Code of Professional Responsibility* EC 2–8 (1979). The Disciplinary Rule also serves to discourage overzealous or unprofessional solicitation by denying compensation to a lay person who engages in such solicitation on behalf of a lawyer, or even as to another lawyer unless the latter has also rendered legal services for the client and the fee that is shared reflects a fair division of those services. *DR* 2–107; *see In re Bregg,* 61 *N.J.* 476 (1972); *In re Introcaso,* 26 *N.J.* 353 (1958); *In re Frankel,* 20 *N.J.* 588 (1956). For these policies to succeed, both indirect as well as direct fee-sharing must be banned so as fully to preserve the integrity of attorney-client relations.

The plain terms of the Disciplinary Rules and the salutary policy they serve indicate that infractions are to be regarded as serious matters. The fact that respondent did not directly pay Hurley did not relieve him of responsibility. "[A] lawyer may not circumvent a disciplinary rule through actions of another." *DR* 1–102(A)(2); *see, e.g., Matter of Carroll,* 124 *Ariz.* 80, 602 *P.*2d 461, 466 (1979); *In re Berlant,* 458 *Pa.* 439, 328 *A.*2d 471, 474 (1974). As noted, respondent's behavior must be viewed from the perspective of "an informed and concerned private citizen." *In re Opinion No. 415,* 81 *N.J.* 318, 325 (1979); *see In re Makowski,* 73 *N.J.* 265, 270 (1977).

We conclude that respondent has violated Disciplinary Rule 2–103(C) and 3–102(A). We respect that respondent's career has been without blemish and that he has devoted valued

service both to the profession and other civic undertakings. Nonetheless, we agree with the Review Board that in this case, discipline in the form of a public reprimand is appropriate and is hereby imposed. Respondent shall also pay for the costs of transcripts and related administrative costs.

*For reprimand*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

*Opposed*—None.