NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NV-10-1494 PaDKi |
| BECHARA VICTOR HONEIN, | Bankr. No. 05-51094-GWZ |
| Debtor. | Adv. Proc. 05-05121-GWZ |
| MICHAEL HARRIS, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| BECHARA VICTOR HONEIN, | |
| Appellee. | |

Argued and Submitted on June 15, 2012,
at Las Vegas, Nevada

Filed - June 27, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

_____

Appearance:     Michael H. Ahrens of Sheppard, Mullin, Richter &
                Hampton, LLP argued for appellant Michael Harris.
                No appearance at argument for appellee Bechara
                Honein.

_____

Before: PAPPAS, DUNN and KIRSCHER, Bankruptcy Judges.

_____

    [1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

-1-

Michael Harris ("Harris") appeals the bankruptcy court's judgment denying his motion for a partnership accounting and settling title to certain real property in his adversary proceeding against chapter 11[2] debtor Bechara Victor Honein ("Honein"). We AFFIRM.

**FACTS**

Unless otherwise noted, the parties do not dispute the underlying facts in this appeal.

In 2002, Honein and Harris entered into an oral partnership agreement to purchase real property on which a gas station would be operated. The parties never prepared a written partnership agreement. The partnership was to be equally owned by Honein and Harris, with each partner to have an equal responsibility to contribute the sums necessary to fund the partnership. While it was intended that the partnership acquire and own the real property, it would not own or operate the gas station business.

The parties agreed that, when acquired, title to the real property would be placed in Honein's name, because Harris had outstanding money judgments against him and was experiencing other problems with his creditors:

COUNSEL FOR HONEIN: And, in fact, sir, you told
Mr. Honein that you could put nothing in your name
because of your problems with the creditors. Am I
correct?

HARRIS: Yes, sir.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as in force prior to the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 ("BAPCPA").

Trial Tr. 107:17-21, April 26, 2007. It was agreed that Honein, alone, would own and operate the gas station business.

Harris' initial obligation to the partnership was to contribute $45,000, which the partners then expended on costs and offers on properties that were not ultimately purchased. Harris was also primarily responsible for obtaining the financing for any real property purchase.

From 2002 to 2003, Honein and Harris inspected various properties and made offers to acquire them. Ultimately, one offer proposed by Honein was accepted for a property in Carson City, Nevada (the "Property") owned by BP West Coast Products LLC ("BP/ARCO").[3] Honein and BP/ARCO executed a sale contract for $550,000. Although it is not clear in the record the date when the offer was accepted, on March 25, 2003, BP/ARCO informed Honein that if the sale of the Property did not close within five business days, the sale contract would be rescinded. Harris was unable to obtain commercial financing for this purchase. Instead, Harris arranged for a short-term loan from his brother, Lee Harris, in the amount of $450,000 to close the sale. Honein alone signed a promissory note in favor of Lee Harris, with no reference to any partnership with Harris.

Although the parties do not dispute that the amount owed on this promissory note was $450,000, the note executed by Honein was for $850,000. The bankruptcy court later found that both Honein and Harris intended that this false document would be used to

[3] BP West Coast Products LLC owns Atlantic Richfield Corporation, which markets gasoline under the "ARCO" trade name in ARCO service stations. Hence, the parties refer to the corporate entity as BP/ARCO.

-3-

inflate the value of the Property to induce banks to provide a much higher commercial loan. Then, through this scheme, after paying off the $450,000 to Lee Harris, the parties could pocket the fraudulently obtained surplus in loan proceeds. See Amended Findings of Fact no. 21, November 3, 2010.

The sale of the Property closed on May 23, 2003; all documents were signed by Honein with no reference to a partnership with Harris; title vested in Honein. At some point not clear in the record, Honein gave a grant deed to Lee Harris for a 50 percent interest in the Property, which deed was never recorded. Lee Harris, in turn, provided a quitclaim deed to Harris, again at a time not clear in the record, which was also not recorded.

A condition on title to the Property was that it be used to operate a BP/ARCO service station. At closing of the sale, Honein applied for a BP/ARCO franchise to operate a service station and convenience store on the Property. Honein then attended and successfully completed the mandatory franchise holder "training school," paying the $15,000 tuition, and was awarded the franchise in his own name. Harris never attended the training school or attempted to obtain the status of a franchise holder. Indeed, because Harris never qualified as a BP/ARCO franchise holder, the terms of the deed to the Property prevented him from ever owning it.

Honein has owned and operated the service station and convenience store since 2003. Harris was employed there at times, receiving total wages of $38,400.

The bankruptcy court would ultimately determine, and the parties do not dispute, that the partnership between Honein and

-4-

Harris ended in June 2004. Harris alleges that Honein punched him; Honein alleges that Harris threatened his children. Honein obtained a restraining order against Harris.

Apparently in response to a continuing dispute with Lee Harris over repayment of the $450,000 loan, Honein filed a chapter 11 petition on April 15, 2005. Honein's Schedule D lists a disputed secured claim of $450,000 in favor of Lee Harris. Neither Honein's schedules nor statement of financial affairs makes any reference to any partnership with Harris, or in any way lists Harris as a creditor.

Harris filed a complaint commencing the subject adversary proceeding against Honein on December 6, 2005. The complaint was amended on June 19, 2006 (the "First Amended Complaint"). The First Amended Complaint sought an order from the bankruptcy court declaring that the Property was held in trust by Honein for the benefit of Harris; adjudging Harris to have an equitable lien for the value of 50 percent of the Property; quieting title to, and determining that Harris is the beneficial and legal owner of, 50 percent of the Property; and monetary damages. Honein filed an Answer and Counterclaim on September 15, 2006, seeking an award of money damages from Harris for his alleged fraud, and a declaratory judgment that Honein was the sole owner of the Property.

The bankruptcy court conducted a trial in the adversary proceeding on April 26 and 27, 2007. Honein, Harris and Lee Harris testified. At the end of trial, the bankruptcy court orally ruled on the record that both parties were in pari delicto, because they had established and pursued the partnership business for an illegal purpose and, therefore, the bankruptcy judge

-5-

stated, "I am finding against both parties and all their claims for relief." Trial Tr. 30:19-21, April 27, 2007. The bankruptcy court entered Findings of Fact and Conclusions of Law on January 6, 2009. Regarding the counterclaim, the court ruled that Honein was prevented from recovery under the doctrine of in pari delicto. As to Harris' claims, the court determined:

- Harris had breached the partnership agreement by failing to contribute his 50 percent of the funds needed by the partnership, and in fact "contributed nothing towards the purchase of the Property, or its improvement and maintenance through June 2004."

- The grant deed from Honein to Lee Harris was intended for security purposes only, and did not transfer any ownership interest in the Property to him. As a result, the quitclaim deed from Lee Harris to Harris also did not create an ownership interest in the Property.

- Harris was not entitled to recover damages.

- The partnership was dissolved and neither the partnership, Harris nor Lee Harris had any claim or ownership interest in the Property.

The bankruptcy court made the following ruling at the end of its conclusions, of importance in this appeal: "However, both Harris and Honein are entitled to an accounting or a valuation of their Partnership interests in this adversary proceeding pursuant to the applicable provisions of the Nevada Revised Statutes."

In April 2010, apparently in response to the bankruptcy court's indication that an accounting would be allowed, Harris filed a Motion for an Accounting and Valuation of Partnership Interests. Honein filed an opposition on August 27, 2010, arguing

-6-

that Harris was entitled to no relief under the court's finding that he was in pari delicto, would not be entitled to any recovery from an accounting, and that an extensive accounting had already been provided to the court.

The bankruptcy court conducted a hearing on Harris' motion for an accounting on September 10, 2010. After allowing brief presentations by counsel, the court ruled that since the parties were in pari delicto, neither of them were entitled to an accounting, citing case law to support its position. Consistent with its ruling, the bankruptcy court entered Amended Findings of Fact and Conclusions of Law on November 3, 2010. While generally consistent with the original findings and conclusions, the court added two significant conclusions: "The doctrine of in pari delicto prevents both Harris and Honein from recovering on their Complaint and Counterclaim, because otherwise they would be unjustly enriched." Conclusion of Law 9; and "Neither party is entitled to an accounting based on the doctrine of in pari delicto." Conclusion of Law 10.

Both of these conclusions were then incorporated in a Judgment After Trial, entered by the bankruptcy court on November 24, 2010. The Judgment also ruled that the Partnership had been dissolved as of June 2004, and that the Property "shall remain the sole and separate property of Bechara Victor Honein." Harris filed this timely appeal of the Judgment on December 7, 2010.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(b)and 157(b)(2)(A), (C) and (O). We have jurisdiction

-7-

under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in denying Harris' motion for a partnership accounting based on the doctrine of in pari delicto.

**STANDARD OF REVIEW**

A partnership accounting under Nevada law is an equitable proceeding. Oracle USA, Inc. v. Rimini St., Inc., 2010 U.S. Dist. LEXIS 84254 * 19 (D. Nev. 2010); Bengoa v. Reinhart, 297 P. 506, 510 (Nev. 1931). A trial court's decision to grant or deny equitable relief is reviewed for an abuse of discretion. Forest Grove Sch. Dist. v. T.A., 523 F.3d 1078, 1084 (9th Cir. 2010). In determining whether a bankruptcy court abused its discretion, we review whether the bankruptcy court applied the correct rule of law de novo. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). We then determine whether the court's application of that rule was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)).

**DISCUSSION**

**The bankruptcy court did not abuse its discretion in denying Harris' motion for accounting based on the doctrine of in pari delicto.**

In clear terms, the bankruptcy court indicated that "the entire basis for my ruling is the [illegal] purpose of the [partnership] agreement and the lack of credibility of these witnesses and these parties. That's it." Hr'g Tr. 36:18-20. We agree with the bankruptcy court that, on this record, and by

-8-

application of the doctrine of in pari delicto, Harris lacked any right to an accounting from Honein.

The bankruptcy court determined that Honein and Harris had both engaged in fraudulent activity in their partnership by arranging with Lee Harris to execute a false promissory note to indicate that they had borrowed $850,000 instead of $450,000. They did this with the intention of scamming a bank to obtain a commercial loan, paying off the $450,000 note, and pocketing the surplus in fraudulently obtained funds. The bankruptcy court found that they had, in fact, contacted banking institutions for that fraudulent purpose:

> In an attempt to obtain 100% financing for the Property, Harris and Honein had a secret agreement to overstate the actual amount of the Lee Harris loan and attempt to mislead any potential lender into believing that the amount borrowed had been $850,000 (instead of $450,000), and, together with the actual purchase price of $550,000, showed the value of the Property to be approximately $1.4 million. The buyer (the Partnership) would then obtain a refund from the seller, thereby inducing a bank to loan 100% of the actual purchase price. Both Harris and Honein made representations to banks that they knew were not true in order to secure a loan.

Amended Findings of Fact and Conclusions of Law no. 21, November 3, 2010. On this basis, the bankruptcy court determined that the partnership of Honein and Harris had been engaged in unlawful activities, and justified its application of in pari delicto to deny Harris' motion for a partnership accounting. Harris has not challenged the bankruptcy court's factual findings that he and Honein were, in fact, wrongdoers, who attempted to use their partnership for an unlawful purpose.

A trial court's authority to deny relief on the basis of the doctrine of in pari delicto is a well-known equitable concept

-9-

applicable under both federal and Nevada state law.  The Supreme
Court explained its application in <u>Bateman Eichler, Hill Richards,</u>
<u>Inc. v. Berner</u>, 472 U.S. 299 (1985):

> The common-law defense at issue in this case derives
> from the Latin, <u>in pari delicto potior est conditio</u>
> <u>defendentis</u>: "In a case of equal or mutual fault . . .
> the position of the [defending] party . . . is the
> better one."  The defense is grounded on two premises:
> first, that courts should not lend their good offices to
> mediating disputes among wrongdoers; and second, that
> denying judicial relief to an admitted wrongdoer is an
> effective means of deterring illegality.  In its classic
> formulation, the in pari delicto defense was narrowly
> limited to situations where the plaintiff truly bore at
> least substantially equal responsibility for his injury,
> because "in cases where both parties are in delicto,
> concurring in an illegal act, it does not always follow
> that they stand in pari delicto; for there may be, and
> often are, very different degrees in their guilt."
> 1 J. Story, EQUITY JURISPRUDENCE 304-305 (13th ed. 1886)
> (Story). . . .  Notwithstanding these traditional
> limitations, many courts have given the in pari delicto
> defense a broad application to bar actions where
> plaintiffs simply have been involved generally in "the
> same sort of wrongdoing" as defendants.  <u>Perma Life</u>
> <u>Mufflers, Inc. v. International Parts Corp.</u>, 392 U.S.
> [134, 138 (1968).][4]

The Ninth Circuit recently reaffirmed its commitment to the
doctrine of in pari delicto:

> Property delivered under an illegal contract cannot be

---

[4] Indeed, the Supreme Court recognized that the doctrine
derives from the equity jurisprudence in effect before the
enactment of the Constitution.

> The objection, that a contract is immoral or illegal as
> between plaintiff and defendant, sounds at all times
> very ill in the mouth of the defendant. It is not for
> his sake, however, that the objection is ever allowed
> . . . . The principle of public policy is this; <u>ex dolo</u>
> <u>malo non oritur actio</u> [out of fraud no action arises]
> . . . . It is upon that ground the Court goes; not for
> the sake of the defendant, but because they will not
> lend their aid to such a plaintiff.

<u>Id.</u> at n.12 (quoting <u>Holman v. Johnson</u>, 1 COWP. 341, 343, 98 Eng.
Rep. 1120, 1121 (K.B. 1775).

-10-

recovered back by any party in pari delicto. The general rule, in its full Latin glory, is <u>in pari delicto potior est conditio defendentis</u>, or in case of equal fault the condition of the party defending is the better one. The doctrine has been restated to be that neither party to an illegal contract will be aided by the court, whether to enforce it or set it aside.

<u>Kardoh v. United States</u>, 572 F.3d 697, 700 (9th Cir. 2009) (although in a criminal case, the doctrine was applied to resolve a civil issue, that a party could not seek approval from the district court to recover fees voluntarily paid in furtherance of an illegal agreement).[5]

The Nevada Supreme Court has taken a position consistent with the federal treatment of in pari delicto, in particular where, as here, when faced with the request by a plaintiff for an accounting arising from activities rooted in an illegal purpose:

When a party suffers injury from wrongdoing in which he engaged, the doctrine of in pari delicto often prevents him from recovering for his injury. The rationale underlying the doctrine is that there is no societal interest in providing an accounting between wrongdoers.

<u>Kahn v. Dodds (In re AMERCO Derivative Litig.)</u>, 252 P.3d 681, 695 (Nev. 2011).[6]  However, the Nevada Supreme Court has articulated

---

[5] To apply in pari delicto, a trial court need not find that a partnership or other agreement was criminal or prohibited by statute. It is enough that the partnership, while engaged in lawful business, conduct that business in an illegal manner (as was the case here). AM. JUR. 2D PARTNERSHIPS ¶ 679 (West Pub., 2d ed., 2003); <u>Simmons v. Benn</u>, 96 A.D.2d 507 (N.Y. Sup. Ct. 2d Dep't 1983). Indeed, counsel for Harris acknowledged that this was correct in the bankruptcy court. Trial Tr. 15:10-12, April 27, 2007.

[6] The <u>AMERCO</u> court was referring to an accounting in derivative litigation between a corporation and shareholders, rather than an accounting between partners. However, both proceedings are equitable in nature, where the courts adjudicate the amounts due the separate parties. And the common principle is that illegality of the agreement bars equitable relief.

-11-

guidelines for its trial courts in considering whether to apply in pari delicto:

> [T]he courts should not be so enamored with the Latin phrase "in pari delicto" that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, [1] the public cannot be protected because the transaction has been completed, [2] where no serious moral turpitude is involved, [3] where the defendant is the one guilty of the greatest moral fault and [4] where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

Shimrak v. Garcia-Mendoza, 912 P.2d 822, 827 (Nev. 1996) (quoting Magill v. Lewis, 333 P.2d 717, 719 (Nev. 1958)).

The bankruptcy court explicitly acknowledged and reviewed these Magill factors in reaching its decision to apply in pari delicto in this case.

First, "[w]here, by applying the rule, the public cannot be protected because the transaction has been completed." The bankruptcy court observed that both parties were seeking damages through the date of trial, and thus the "transaction" has not been completed. Trial Tr. 23:19-20, April 27, 2007. Indeed, the fraudulent transaction contemplated by the partners never was consummated, despite their efforts.

Second, "where no serious moral turpitude is involved." Here the bankruptcy court made an explicit finding that "there is serious moral turpitude on behalf of both parties." Trial Tr. 23:21-23. The court's finding of moral turpitude based on the intent to defraud third party banking institutions is consistent with Ninth Circuit law. Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1287 (9th Cir. 1996) ("Actual fraud is the type

-12-

involving moral turpitude, or intentional wrong.").

Third, "where the defendant is the one guilty of the greatest moral fault." The bankruptcy court declined to find that either party had greater moral fault than the other. Trial Tr. 24:10-11 ("I am not prepared to find that either has greater moral fault than the other."). Of course, this is not a finding that Honein had greater moral fault, either. Moreover, a fair reading of the record shows that the bankruptcy court would not hold Honein in greater moral fault. The court consistently used stronger language in describing the actions of Harris:

> THE COURT: I found Michael Harris's testimony to be unreliable and untrustworthy. I found Mr. Honein's testimony to be incredible in certain respects[.]

Hr'g Tr. 4:13-15, September 10, 2010.

> THE COURT: [After finding that Honein repaid the Lee Harris loan on his own] Michael [Harris] only put in $45,000, most of which, if not all, he's been repaid. He hasn't suffered any economic injury that's been proven to me.

Hr'g Tr. 6:15-17.

> THE COURT: I specifically found that Michael Harris was in breach of his duties to Mr. Honein under any oral contract.

Hr'g Tr. 7:8-10.

> THE COURT: To have a party [Harris] who was engaged in this type of conduct who has suffered no financial injury that has been proven to me, that failed to act in accord with the oral agreement, just think would be entitled to anything, much less $475,000 is, as I have said at the time of trial, a step through the looking glass.

Hr'g Tr. 7:19-24.

> THE COURT: [Harris] would never really answer whether or not he had funds to be able to make his capital contributions which he had promised to make at the time they entered into this agreement, even though he did acknowledge a repeated request by Mr. Honein to do

-13-

so. . . . And I don't believe he ever intended to. And that's an express finding. He fully expected to be able to turn the Property around, pay off his brother, and pocket the difference.

Hr'g Tr. 16:6-19.

THE COURT: I think the truth and reality is something that to Mr. Mike Harris [] there's only a fleeting relationship.

Hr'g Tr. 19:5-7.

THE COURT: Based on what he said, Michael Harris brought nothing to this [Partnership]. And then basically Mr. Harris is nothing more than a financial parasite.

Hr'g Tr. 25:8-10.

While the bankruptcy court held that Honein was equally guilty of fraudulent activity, it did not apply the strong terms used to describe Harris' behavior. Based on our review of the record, we can confidently conclude that, although the bankruptcy court declined to hold one party in greater moral fault, these observations, based on credibility determinations at trial, would not support a conclusion that Honein was at greater moral fault. Therefore, this Magill factor does not bar application of in pari delicto in this case.

Finally, "where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff." The bankruptcy court reasoned, correctly in our view, that under the facts of this case, a failure to apply in pari delicto to bar the claims of both parties would itself result in unjust enrichment:

I think that finding that Mike Harris has some type of basis for the recovery of damages as a result of the partnership agreement, when he engaged in the acts and

-14-

conduct, would unjustly enrich him. Likewise, I think if I were not to impose the doctrine of in pari delicto to preclude recovery on the counterclaim that Mr. Honein would be unjustly enriched. He certainly went forward from June of 2004 on the basis that there was no partnership. Those expenses [damages he sought in the counterclaim] were his.

Hr'g Tr. 25:3-7.

At one point, the bankruptcy court appeared to side with Harris' argument that Honein would be unjustly enriched by leaving the Property in the hands of Honein:

THE COURT: [Unjust enrichment] is the strongest factor in Harris' favor not to have the Court apply the [in pari delicto] doctrine.

Hr'g Tr. 24:18-19. Indeed, Harris seems to argue that, since he arranged for the original financing through his brother, he is entitled to some return from the partnership. However, under these facts, it is clear that Harris is not entitled to any return from the partnership because: (1) Harris failed to arrange for permanent financing, something he was obliged to do as his contribution to the partnership; (2) Honein eventually paid off the Lee Harris loan from his own resources and loans on which he was solely obligated; (3) Honein arranged for, and was solely obligated, on the permanent financing; (4) Harris never made any other capital contributions to the partnership for which he was obligated, and, as found by the court, never intended to do so.

In sum, under the Magill factors, the bankruptcy court was not precluded from applying in pari delicto as grounds for its decision to decline to require a partnership accounting.

In challenging the bankruptcy court's application of in pari delicto, Harris argues that, in Nevada, there is an absolute right to an accounting whenever a partnership is dissolved. For

-15-

support, Harris cites to <u>Rasmussen v. Thomas</u>, 644 P.2d 1030 (Nev. 1982) for the proposition that "a court may not distribute partnership assets without requiring a proper accounting among the partners." Harris Op. Br. at 8. On the contrary, there is nothing in the <u>Rasmussen</u> decision that <u>requires</u> a trial court to order an accounting on demand. <u>Rasmussen</u> acknowledged the optional nature of a party's entitlement to an accounting when it wrote, "<u>Ordinarily</u>, actions between partners with respect to partnership business are not maintainable until there has been an accounting or settlement of the partnership affairs." <u>Rasmussen</u>, 644 P.2d at 1031 (emphasis added). The <u>Rasmussen</u> court ordered an accounting under the facts of that case when it could not determine on the record before it "accurate money judgment awards" to the partners. <u>Id.</u>

The bankruptcy court considered the <u>Rasmussen</u> case, and properly distinguished it from the case on appeal:

> <u>Rasmussen v. Thomas</u>. I've studied at length. . . . It doesn't even address in pari delicto. It doesn't address the equitable issues. . . . There was no issue regarding the purpose of the partnership. There was no issue regarding illegality or violation of public policy.

Hr'g Tr. 12:16-25, September 10, 2010.[7]

---

[7] Harris also cites to a more recent California court decision for the proposition that "upon the dissolution of a partnership formed for the purpose of acquiring and holding real property, it is appropriate for the court to order the partnership assets to be sold and the proceeds divided following an accounting." Harris Op. Br. at 8 (citing <u>Navarro v. Perron</u>, 122 Cal. App. 4th 797, 800-01 (Cal. Ct. App. 2004)). We first note that Harris' own words, "it is appropriate," do not imply that an accounting is mandatory. Moreover, there is no reference at all in <u>Navarro</u> to an accounting and no request for any relief

(continued...)

-16-

To support his position, Harris also cites to cases applying Nevada law where the courts refused to apply in pari delicto in partnership accounting actions. In Shimrack, cited above, the plaintiff was a private investigator suing a law firm to recover money for services. The trial court dismissed the action on the grounds that the investigator's agreement with the law firm purported to share legal fees with a nonlawyer in contravention of public policy. Id. at 803. The Nevada Supreme Court reversed the trial court's decision to apply in pari delicto. However, unlike here, the Shimrack court found that all four of the Magill factors applied:

> All four of the Magill factors are present in this case. SCR 188 is entitled "Professional independence of a lawyer." At least one court has recognized that the purpose of the prohibition of fee-splitting is to protect the independence of the judgment of lawyers. Gassman v. State Bar, 18 Cal. 3d 125, 553 P.2d 1147, 1151, 132 Cal. Rptr. 675 (Cal. 1976). The public would not be protected by refusing to enforce this contract, because Garcia has already exercised her judgment in the cases covered by the contract. Indeed, not to enforce this contract would actually endanger the public, because it would allow lawyers to enter into such contracts and then get out of them by invoking SCR 188. The first Magill [factor] is therefore satisfied. As to the second factor, there is no serious moral turpitude involved here. Third, the Garcia-Mendoza firm member [the defendant] must be seen as being guilty of the greatest moral fault since she is the one who violated a professional rule. Finally, not enforcing the contract would unjustly enrich the [defendant] law firm at Shimrak's expense, because he has already performed his part of the agreement. Using the Magill factors, it is clear that the doctrine of in pari delicto should not be

_____

[7](...continued)
that could be considered an accounting. The court's ruling was simply, "The judgment is reversed with instructions to order the property sold, the proceeds applied to pay the obligations of the partnership and any surplus distributed to the partners in cash." Navarro, 122 Cal. App. 4th at 802. The court did not provide any direction on how the cash payments were to be determined.

-17-

applied to deny Shimrak agreed-upon compensation for services rendered.

*Shimrack*, 912 P.2d at 822.

The second principal case cited by Harris was *Locken v. Locken*, 650 P.2d 803 (Nev. 1982). This case focuses upon a dispute between a father and son over the ownership of land. In satisfaction of certain indebtedness owed to the father by a third party, the father agreed to accept an assignment of two patent applications for separate parcels of land. Since the Desert Land Act, 43 U.S.C. § 321 (1964), prohibited the father from making more than one entry in his own name, at the suggestion of his son, the parties verbally agreed to place one of the applications in the son's name. Under this agreement, the father was to make improvements upon the land, and after the patent was granted, the son was to convey the property to his father. The father fulfilled his part of the agreement, expending considerable time, effort and money on land improvement, yet the son refused to convey the property as agreed. The father brought suit to impose a constructive trust on the land in father's favor.

We are puzzled why Harris cites this case because, once again, the Nevada Supreme Court ruled that in pari delicto could not be applied because all four *Magill* factors were present.

> Even assuming arguendo that the agreement was illegal or against public policy, the rule that such agreements are not to be enforced by the courts will not be applied in this instance where: (1) the public interest cannot be restored because of the completed transaction; (2) no serious moral turpitude is involved; (3) the son [defendant] is guilty of greater moral fault than the father; and (4) application of the rule would permit the son [defendant] to be unjustly enriched at the expense of his father. *Magill v. Lewis*, 74 Nev. 381, 333 P.2d 717 (1958).

-18-

In short, the only two cases cited by Harris from the Nevada Supreme Court hold that, where the <u>Magill</u> factors are present, the doctrine of in pari delicto should not be applied by the courts. Even so, this is completely consistent with the bankruptcy court's decision in this case, where none of the <u>Magill</u> factors were present to preclude the application of in pari delicto.

As to non-Nevada cases, Harris criticizes the bankruptcy court for citing <u>Norwood v. Judd</u>, 93 Cal.App.2d 276 (1949), arguing that <u>Norwood</u> denied the application of in pari delicto.[8] <u>Norwood</u> involved a partnership in the contracting business, where the partnership failed to obtain the required license, and the dispute arose whether a partnership accounting should be allowed under the in pari delicto rule. It is true that the court in <u>Norwood</u> declined to apply in pari delicto, but relied on the following now familiar grounds:

> Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.

<u>Id.</u> at 289. <u>Norwood</u> was, in fact, cited by the <u>Magill</u> court and is the source of the later <u>Magill</u> factors. For our purposes, it is sufficient to note that the <u>Norwood</u> court declined to apply in pari delicto because the <u>Magill</u> factors were present. But of even greater importance to our analysis, the Nevada Supreme Court adopted the <u>Magill</u> factors from <u>Norwood</u>, a case granting a

---

[8] It does not appear that the bankruptcy court in this appeal relied on <u>Norwood</u>, only citing it as part of its background research.

-19-

partnership accounting following dissolution of the partnership where the Magill factors were present. Again, this is consistent with the bankruptcy court's rulings in this appeal that in pari delicto can be applied where those factors are absent.

As the bankruptcy court correctly observed, the doctrine of in pari delicto has frequently been applied in other states to bar equitable relief in partnership accounting and similar proceedings. Graham v. Shooke, 482 P.2d 446 (Ariz. 1971) (denied partnership accounting where veterinary firm was operated by medically unlicensed partners); Johnston v. Senecal, 109 N.E.2d 467 (Mass. 1952) (denied partnership accounting where partnership was properly engaged in selling parking meters, but also engaged in exerting improper influence on public officials who purchased such meters); Nahan v. George, 99 N.E.2d 898 (Ohio 1951) (partnership accounting denied where partner violated liquor licensing laws); Pendarvis v. Berry, 52 S.E.2d 705 (S.C. 1949) (partnership accounting denied where one store operated by partnership was unlicensed); Demayo v. Lyons, 216 S.W. 436 (Mo. 1948) (partnership accounting denied where restaurant partnership attempted to sell liquor without a license); Breiford v. Stoll, 26 N.E.2d 159 (Ill. Ct. App. 1940) (partnership accounting denied where purpose of partnership was gambling in violation of statutes); see also OCA, Inc. v. Hassell, 389 B.R. 469 (E.D. La. 2008) (accounting denied where agreement provided for practice of dentistry by a corporation, in violation of statutes).

Given the unchallenged factual findings of the bankruptcy court in this action, the court did not abuse its discretion when it declined to grant Harris' motion for an accounting based on the

-20-

doctrine of in pari delicto.  It applied the correct rule of law, and its conclusions were not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.[9]

**CONCLUSION**

We AFFIRM the bankruptcy court.

---

[9] For the most part, Harris' briefs attack the bankruptcy court's decision to deny the accounting.  However, he ends his Opening Brief with a short challenge to the bankruptcy court's decision to favor the defending party, Honein, by leaving the Property titled in Honein.  In Harris' words,

> Perhaps had the trial court found that Honein had made 100% of the contributions to the Partnership, and that Harris had never contributed anything, the trial court might have been able to justify its one-sided allocation.

Harris' Op. Br. at 17.  As discussed above, however, that is precisely what the bankruptcy court found.  Harris had his $45,000 contribution returned, Honein paid off the Lee Harris loan and arranged for, and was solely obligated on, the commercial financing for the Property.  Whatever value might attach to Harris' obtaining funding from his brother (which was in fact paid off by Honein) is offset by his numerous failures, and indeed in some instances, his refusal, to honor his financial commitments and other obligations to the partnership.

-21-